# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-CV-62769-SCOLA

THEODORE D'APUZZO, P.A.,
Individually and on Behalf of All
Others Similarly Situated,

               Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

               Defendant.

_____/

## DEFENDANT UNITED STATES OF AMERICA'S RESPONSE
## IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Defendant, the United States of America ("United States"), through the undersigned Assistant United States Attorney, hereby files its Response in Opposition to Plaintiff's Motion for Class Certification ("Motion") (ECF No. 37), and states as follows:

## I.    INTRODUCTION

PACER is an electronic public access service that allows users to obtain case and docket information online from Federal appellate, district, bankruptcy courts, and the PACER Case Locator. Currently, there are over 1.1 billion documents available from PACER. These documents are stored across the Judiciary's 203 separate federal court CM/ECF databases. The number of PACER accounts exceeds 2.1 million. These accounts have generated between 2.2 and 2.4 billion billable transactions during the proposed class period.

Plaintiff filed this putative class action alleging that PACER users were improperly charged to download documents that constitute judicial opinions, but are not designated as such in PACER. Plaintiff's claims rely on a provision of the Electronic Public Access Fee Schedule ("Fee Schedule") that states, "no fee is charged for access to judicial opinions." Plaintiff seeks to certify a class of "All PACER users who, between November 22, 2010 and November 22, 2016, paid to access a document constituting a judicial opinion." See Amended Complaint, ¶ 47 (ECF No. 14).

Given the sheer number of PACER documents and accounts, the United States does not contest the numerosity requirement for class certification. See Fed. R. Civ. P. 23(a)(1). Nor does

the United States take issue with commonality, typicality, or adequacy.  See Fed. R. Civ. P. 23(a)(2), (3), (4).  However, the Court should not certify the proposed class because the benefits of the class action mechanism are far outweighed in this case by the resources that would be expended by the Court and the litigants to identify class members and to resolve the myriad individualized inquires that predominate over common issues.

As set forth fully below, Plaintiff has failed to satisfy its burden of proof with respect to the threshold requirement implicit in Rule 23 -- the proposed class must be ascertainable and administratively feasible.  Here, identifying class members would require the United States to cull the orders that Plaintiff claims should be designated as opinions (but are not) from over 1.1 billion documents located on 203 separate court databases.  The United States does not have the database infrastructure or software capability to isolate the documents necessary to identify class members. Plaintiff, for its part, has not proposed any method to accomplish this task.

In addition, the class is not ascertainable because even if the orders could be culled, individual inquiries are necessary to identify class members.  Plaintiff tags class membership to whether a PACER user paid for a judicial opinion, but fundamentally, it is unclear what constitutes an opinion. The Judicial Conference Guidance on which Plaintiff relies for the definition of "written opinion" is inherently subjective and gives the "responsibility for determining which documents meet this definition [to] the authoring judge."  Thus, to establish that an order is an opinion (and that a PACER user is a class member), Plaintiff must show, for each order, that the authoring judge considered it an opinion, when filed.  Evidence that one order is an opinion would do nothing to establish that another order is an opinion. These determinations would involve numerous witnesses and possibly mini-trials, a process not suited for class treatment.

The individualized inquires do not end there.  Class membership is also contingent on whether a user paid for an opinion.  However, the majority of users pay nothing for PACER due to fee waivers and exemptions.  In fact, although Plaintiff generated billable transactions during the class period, he received fee waivers for the majority of those billing cycles.  Thus, each PACER account that downloaded an opinion would need to be examined to determine whether the user paid for an opinion during the class period. For these reasons, the class is not ascertainable or administratively feasible.

Beyond identifying class members, Plaintiff has not met its burden for class certification under Federal Rule of Civil Procedure 23(b)(3) as individual questions predominate over common

issues.  Because there are no objective criteria for determining whether an order is an opinion and that determination is left to the discretion of the authoring judge, the core elements of liability for breach of contract and illegal exaction are not subject to generalized proof.  The opinion status of each order must be separately established.  Moreover, Plaintiff has not come forward with a method for measuring damages class-wide.  If a user in fact paid PACER charges during the class period, the user's account must be analyzed to determine the portion of the payment attributable to opinions as opposed to other documents and dockets accessed during the billing cycle.  Plaintiff has not proposed how it would calculate refunds on a class-wide basis as to the opinions without requiring individual damage calculations.

> Thus, the Court should deny the Motion for Class Certification.

## II.    LEGAL STANDARD

"The party seeking class certification has the burden of proof."  Brown v. Electrolux Home Products, Inc., 817 F.3d 1225, 1233 (11th Cir. 2016) (citation omitted).  "And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses."  Id. (citation and internal quotations omitted).  **All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation."  Id.** (citing Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013); Hansberry v. Lee, 311 U.S. 32, 40-41 (1940)) (emphasis added); see also Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only") (citation and internal quotation marks omitted)).  **"A district court that has doubts about whether 'the requirements of Rule 23 have been met should refuse certification until they have been met."  Brown,** 817 F.3d at 1234 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment) (additional citation omitted) (emphasis added).

 "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)."  Klay v. Humana, Inc., 382 F.3d 1241, 1251 (11th Cir. 2004)(citations omitted), abrogated in part on other grounds by Bridge v. Phoenix Bond Indem. Co., 553 U.S. 639 (2008).  Rule 23(a) requires Plaintiff to establish that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties

are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). For certification of a damage class under Rule 23(b)(3), Plaintiff must establish that "the question[s] of law or fact common to the members of the class predominate over any questions affecting only individual members, and that class action is superior to all other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Additionally, "[a]lthough the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1188 n. 15 (11th Cir. 2003) (citation omitted).

## III.  ARGUMENT

The Court should deny the Motion because identification of class members is not administratively feasible and the class is not ascertainable. Additionally, Plaintiff has failed to satisfy the predominance and superiority requirements of Rule 23(b)(3).

### A.  The Class is Not Administratively Feasible or Ascertainable.

"One threshold requirement is not mentioned in Rule 23, but is implicit in the analysis: that is, the plaintiff must demonstrate that the proposed class 'is adequately defined and clearly ascertainable.'" Bussey v. Macon Cnty. Greyhound Park, Inc., 562 Fed. App'x 782, 787 (11th Cir. 2014) (per curiam) (quoting Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (additional citation omitted)). The Eleventh Circuit has recognized that:

> An identifiable class exists if its members can be ascertained by reference to objective criteria. The analysis of the objective criteria also should be administratively feasible. Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry. Where a plaintiff satisfies this threshold issue, the district court then conducts a rigorous analysis of the Rule 23 prerequisites.

Bussey, 562 Fed. App'x at 787-88 (footnote call number, internal citations, and quotations omitted). "If a plaintiff fails to demonstrate that the putative class is clearly ascertainable, then class certification is properly denied." Randolph v. J.M. Smucker Co., 303 F.R.D. 679, 685 (S.D. Fla. 2014) (citing Walewski v. Zenimax Media, Inc., 502 Fed. App'x 857, 861 (11th Cir. 2012)).

Here, Plaintiff defined the class as:

**All PACER users who, between November 22, 2010 and November 22, 2016, paid to access a document constituting a judicial opinion.**

See Amended Complaint, ¶ 47. The only exclusions to the proposed class definition are: the Government and its agencies and officers; judges and judicial officers presiding over this matter, the members of their immediate families, and their judicial staff; Plaintiff's counsel and their law firms; and PACER users who have incurred improper charges to access documents constituting judicial opinions in excess of $10,000. See id. Thus, the proposed definition includes PACER users who paid to access opinions from every federal court from which the opinions were issued throughout the country (bankruptcy, district, and appellate courts).

### 1. Plaintiff has not proposed an administratively feasible method for culling the alleged judicial opinions.

To determine class membership under the proposed definition, PACER users who paid to access an opinion need to be identified. The gravamen of Plaintiff's Complaint is that there are orders that PACER users paid to download that should be free because they are actually opinions, but are not designated as such in PACER. However, Plaintiff has not provided an administratively feasible method for culling these orders (the alleged opinions) from over 1.1 billion documents that exist on over 200 court databases.

"In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." Karhu v. Vital Pharmaceuticals, Inc., 621 Fed. App'x 945, 947 (11th Cir. 2015); Bussey, 562 Fed. App'x at 788 (holding that district court abused its discretion in certifying class because plaintiffs "ha[d] not provided any indication that they have, or even that they can obtain, data about losses at the game level"). **"A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible."** Karhu, 621 Fed. App'x at 948 (citation omitted) (emphasis added).

Here, Plaintiff has done nothing more than allege, in conclusory fashion, that the putative class is ascertainable "through objective criteria, such as the Opinions Definition, as well as PACER's own business records, which contain contact information including members' names and e-mail addresses." See Motion, p. 18. However, in March 2017, in seeking a stay of discovery

5

in this case (ECF Nos. 17, 17-1),[1] the United States explained that PACER does not have the functionality to run searches to identify the documents related to the class allegations.  In support, the United States submitted the Declaration of Wendell Skidgel Jr., Senior Attorney for the Administrative Office of the U.S. Courts ("Mr. Skidgel") (ECF No. 17-1).  Because Plaintiff had not propounded discovery yet, the United States made assumptions about the documents Plaintiff would request so that Mr. Skidgel could conduct his analysis of PACER functionality relative to discovery implicated by the allegations. Specifically, the United States assumed that Plaintiff would request copies of orders where: (a) the document contains the word "opinion" in the title; (b) the text of the document refers to itself as an opinion; (c) the docket text for the document contains the word "opinion;" (d) the document was docketed as a 'Report and Recommendation' and the R&R is linked to an order that adopts it. (ECF No. 17-1, ¶ 5).

Based on these assumptions, Mr. Skidgel stated that to identify and access documents related to the allegations of the putative class, the Judiciary would need to develop or acquire software to run against the Judiciary's 203 separate court CM/ECF databases.  See id. at ¶¶ 5-9. Mr. Skidgel stated that the software would need to be written, tested, and installed and detailed the level of sophistication required to accomplish the searches outlined above. See id. at ¶¶ 6-9.  In sum, Mr. Skidgel's March 2017 Declaration establishes that PACER does not have the functionality to run the searches necessary to identify the class members under Plaintiff's proposed class definition.  Additionally, Mr. Skidgel stated that once the documents are identified, they would need to be matched against 2.2 to 2.4 billion PACER billing transaction records to determine whether PACER users incurred charges for these documents.  Id. at ¶ 10.

Despite the fact that the United States explained PACER's limitations over nine (9) months ago, Plaintiff has not come forward with an administratively feasible method for identifying the purported opinions that are not designated as such in PACER.  Instead, Plaintiff propounded interrogatories seeking identification of a much wider swath of orders than those initially anticipated by the United States when it sought the discovery stay.   Specifically, Plaintiff asked the United States to:

> 1. Identify all documents that were accessible via PACER as of November 22,
> 2016, whose title contain any of the following words: "Opinion," "Order,"

---

[1]     The Court granted the discovery stay pending a ruling on the United States' Motion to Dismiss. (ECF No. 26).  The Court lifted the discovery stay when it denied the Motion to Dismiss. (ECF No. 28, p. 8).

"Decision," "Report," "Recommendation," "Decree," "Findings," "Conclusions," "Injunction," "Judgment," or "Restraining" (regardless of capitalization, and whether by itself or with other words), and whose title also does not contain any of the following words, or combination of words: "Schedule" or "Scheduling," "Enlargement," "Extension", "Procedure" or "Procedural", "Conference," "Hearing," "Leave," "Deadline," "Pauperis," "Continuing" or "Continuance," "Management," "Pretrial," "Pro Hac Vice", "Setting", "Substitution," or "Time" (regardless of capitalization), which were not designated as an "opinion" for purposes of PACER charges as of November 22, 2016 (for avoidance of doubt, this response also should include documents whose "opinions" designation may have changed after November 22, 2016). For each document, please include the court, case number, docket entry number, title, filing date, and number of pages.

2. To the extent not already covered by Interrogatory No. 1 above, identify all documents accessible via PACER as of November 22, 2016, whose "Event category" for purposes of CM/ECF "Docket Activity Reports" were flagged as "order," "order-cr," "orderx," or any other "order" variation (as illustrated by the sample CM/ECF screenshot below), and whose title also does not contain any of the following words, or combination of words: "Schedule" or "Scheduling," "Enlargement," "Extension", "Procedure" or "Procedural", "Conference," "Hearing," "Leave," "Deadline," "Pauperis," "Continuing" or "Continuance," "Management," "Pretrial," "Pro Hac Vice", "Setting", "Substitution," or "Time" (regardless of capitalization), which were not designated as an "opinion" for purposes of PACER charges as of November 22, 2016 2016 (for avoidance of doubt, this response also should include documents whose "opinions" designation may have changed after November 22, 2016). For each document, please include the court, case number, docket entry number, title, filing date, and number of pages.

See Exhibit B hereto.

As before, the United States does not have software capable of searching its court databases to identify the documents Plaintiff seeks to identify class members from the 1.1 billion documents available from PACER. [2]  See Declaration of Wendell A. Skidgel, Jr., dated January 5, 2018, ¶ 8, attached hereto ("Skidgel Decl."). Although software was recently developed by a district court that can conduct Full Text Searching ("FTS") searching on documents and the Judiciary now has

---

[2]      The declaration Plaintiff attaches to the Motion illustrates this point (ECF No. 36).  To find the orders attached to the declaration, Plaintiff utilized Lexis Advance, which has the functionality to conduct text searches.  See id. at ¶¶ 2-3.   As explained below, PACER does not have this functionality.

this software on its CM/ECF servers, it cannot be used to identify the documents Plaintiff requests, absent substantial modification and coordination among over 200 federal courts.  See id., ¶ 9.

The FTS software uses a Lucene[3] database, which must be populated with case information and document information ("FTS database").  See id., ¶ 10.  Approximately, one half of the federal courts have **not** built FTS databases.  Building an FTS database can take at least three (3) months. See id., ¶ 10.  It may take longer as some courts will likely allow databases to be built only at night to ensure court operations are not affected.  See id.  One challenge with building the FTS databases is that the documents contained therein must have been converted or published to pdf format; scanned images cannot be processed. For those courts that have already built FTS databases, the databases would need to be updated because not all courts that have built FTS databases have kept them current.  See id., ¶ 11.  Additionally, some of the courts that have built FTS databases have not implemented FTS software.  See id.

Further, even if the databases were up and running and the FTS software implemented, the software cannot find the orders Plaintiff seeks.  See id., ¶ 12.  For example, the FTS software lacks the capability to differentiate between the "title of the document" and the text of the document, as Plaintiff requests in its discovery requests to identify class members, see supra, p. 7.  See Skidgel Decl., ¶ 14.  Also, the FTS software does not interface with CM/ECF to determine if a document has already been marked as an opinion.  See id., ¶ 13. As such, the software returns results that include orders designated as opinions and those not designated as opinions in CM/ECF.  See id. Further, the software returns only 100 results at a time requiring multiple searches in an already time and labor-intensive effort.

To the extent Plaintiff argues that the United States should build databases and create or modify software to cull the orders it seeks, the United States has no such obligation to modify its systems to function in the manner Plaintiff wants to identify putative class members.[4]  Instead, it

---

[3]     A Lucene database is a Full Text Search library that can add search functionality to an application.  See Skidgel Decl., fn. 1.

[4]     Building and updating databases and modifying, testing, and distributing FTS software capable of identifying documents related to the class allegations would be a significant undertaking for the Judiciary.  This effort would require programming at the AO, testing at the AO Testing Center, and coordination and implementation across over 200 federal courts.  See id., ¶ 16.

is Plaintiff's burden of **proof** to come forward with an administratively feasible method to identify class members with minimal individual assessment using existing systems and data.  See Wal-Mart Stores v. Dukes, 564 U.S. 338, 350 (2011) ( "Rule 23 does not set forth a mere pleading standard").

At least three Eleventh Circuit cases are instructive on this point.  In Ward v. EZPawn Florida, Inc., 679 Fed. App'x 987 (11th Cir. 2017) (per curiam), the Eleventh Circuit affirmed the district court's denial of class certification where the plaintiff had not proposed an administratively feasible method to identify class members.  Id. There, the plaintiff alleged that the defendant violated the Florida Pawnbroking Act, which provides that a pawnbroker can charge a $2 fee if a pledgor does not present a pawn ticket when retrieving pledged property so long as the pawnbroker obtains an affidavit concerning the lost ticket.  Id.  The plaintiff sought to certify a class of all defendant's pledgors who were charged the fee when there was no jointly signed affidavit prepared.  Id.

The plaintiff relied on the defendant's database, EZSystem, to identify class members.  Ward v. EZPawn Florida, Inc., 2016 WL 8939120, at *4 (M.D. Fla. Jun. 3, 2016), aff'd 679 Fed. App'x 987 (11th Cir. 2017).  EZSystem contained pledgors' contact information and whether the fee was charged.  Id. at *2.   In denying class certification, which was affirmed by the Eleventh Circuit, the district court found that plaintiff had not offered an administratively feasible method to use EZSystem to identify the class members because the database could not isolate the data the plaintiff needed, namely sorting pledgors who were charged a fee for a missing ticket from those that were charged regardless of presenting a ticket.  Id. at *4-*5.  The district court concluded that neither the database nor the plaintiff's proposed statistical sampling method would yield the necessary data.  Id. at *5.

In Bussey, 562 Fed. App'x 782, the Eleventh Circuit held that the district court abused its discretion in certifying a class that was not adequately defined and clearly ascertainable.  Id. at 788.  The plaintiffs there sought to certify a class of all persons who during the class period, while using Q-Cards (loyalty cards), lost money or value playing electronic bingo at Victoryland.  Id.  at 784.  When a player used a Q-Card, defendants' software tracked information about the player such as wins and losses on a session-by-session basis, the machine on which the session was played, and the player's winnings and purchases during the session.  Id. at 785-86.  The software also generated reports showing the name and address of the person who used the Q-Card, the total

amount wagered, the total amount won, the net loss to the Q-Card user, among other information. Id. The Eleventh Circuit held that the reports generated by the software provided sufficient data to identify the individuals who, while using their Q-Cards, suffered net losses at the session level. Id. at 788.  However, because the plaintiff-appellees had "not provided any indication that they have, or even that they can obtain, data about losses at the game level," the Court held that the class definition must be revised to include only those players who suffered net losses at the session level.  Id.

In Karhu, 621 Fed. App'x 945, the plaintiff brought a putative class action against the defendant for false advertising relating to a dietary supplement. Id. at 946.  The plaintiff sought to certify a class of purchasers of the supplement.  Id.  Plaintiff asserted only that it would use defendant's "sales data" to identify class members, but failed to explain how the class data would aid identification.  Id. at 949.  The Eleventh Circuit affirmed the district court's denial of class certification.  Id.

In the instant case, as in Karhu, Plaintiff has not offered **any** method for culling the orders it seeks from the over 1.1 billion documents that reside on the court databases. Further, as in Ward and Bussey, PACER does not have the functionality to isolate the data Plaintiff requests, namely the opinions that the putative class members downloaded from the other documents on the court databases.  Put simply, PACER is not Westlaw or LexisNexis.  The purpose of PACER is to provide the public with electronic access to case filings and docket information online. https://www.pacer.gov/.  It is not designed for research using system-wide searches. Accordingly, because Plaintiff has not established an administratively feasible method for culling the purported opinions that are not designated as such in PACER, identifying class members is not administratively feasible.[5]  Thus, class certification should be denied.

In the Motion (pp. 14, 19), Plaintiff states with limited explanation that a class of PACER users was certified in a case pending in the U.S. District Court for the District of Columbia, Nat'l Veterans Legal Services Program v. U.S., Case No. 1:16-CV-00745-ESH.  There are important

---

[5]    Although the class definition is "limited" to PACER users that paid to access judicial opinions during the six (6) year period from 2010-2016, the entire universe of documents on PACER would have to be searched to find the alleged opinions.  This is because an order that pre-dates the class period may have been downloaded and paid for during the class period.

differences between the instant case and Nat'l Veterans that bear directly on the class certification issues raised herein.

In the instant case, Plaintiff asserts an error in the **application** of the Fee Schedule, namely that PACER users paid for opinions that are not designated as such in PACER. This claimed error and the way in which Plaintiff has defined the class renders the proposed class definition unworkable and results in individual issues predominating over common questions, as discussed below. By contrast, in Nat'l Veterans, 235 F.Supp.2d 32 (D.D.C. 2017), the plaintiffs challenged the legality of the PACER Fee Schedule **as a whole** on the ground that the fees violate the E-Government Act because they are "more than necessary to cover the cost of providing access to electronic records." Id. at 36. The plaintiffs' legal theory is that the Judiciary was required to set a lower rate for the fees that corresponded to PACER's funding needs. Id. at 44. Accordingly, the court certified a class of "All individuals and entities who have paid fees for the use of PACER between April 21, 2010, and April 21, 2016, excluding class counsel in this case and federal government entities." Id. at 39.

Thus, Nat'l Veterans is about the legality of the Fee Schedule as opposed to a challenge to the application of the Fee Schedule, as exists in the instant case. The practical concerns in the instant case that should defeat class certification (i.e. culling the alleged opinions from the databases, the individual inquiries necessary to determine whether judges in fact designated those orders as opinions, determining whether class members paid for the opinions) are not present in Nat'l Veterans. Therefore, the Court should **not** certify a class in the instant case solely because a PACER-related class was certified by another court. Instead, the Court should deny class certification for the reasons set forth herein.

### 2. *Identifying the class members requires individualized inquiries.*

Even if an administratively feasible method existed to cull the orders Plaintiff seeks, more would be required to identify class members. Individualized inquiries are necessary to answer at least two questions: (1) whether an order is a judicial opinion and (2) for a judicial opinion, whether a PACER user paid to access the document during the class period.

### a. **Plaintiff has not identified objective criteria for determining whether a putative class member accessed a "judicial opinion" from PACER.**

Plaintiff's proposed class definition tags class membership to whether a particular PACER user paid to access a judicial opinion. However, there are no objective criteria for determining

what constitutes an opinion. While the Fee Schedule provides that "[n]o fee is charged for access to judicial opinions," it does not define "judicial opinion." <u>See</u> Exhibit A.  In 2004, the Judicial Conference issued the following guidance ("Guidance"):[6]

> For the purposes of the E-Government Act of 2002, the official guidance is that "written opinion" is defined as, "any document issued by a judge or judges of the court, sitting in that capacity, that sets forth a reasoned explanation for a court's decision." This definition is clarified by the following points:
>
> 1.  The responsibility for determining which documents meet this definition rests with the authoring judge, and the determination should be made at the time the document is filed;
>
> 2.  The decision as to whether a document meets this definition is not the same as the decision about whether an opinion is to be published;
>
> 3.  The definition is expressly intended to cover reports and recommendations issued by magistrate judges at such time as any action is taken by a district judge on a report and recommendations issued by a magistrate judge, and also includes a summary order adopting such report and recommendations;
>
> 4.  The definition is not intended to include routine, non-substantive orders such as scheduling orders or rulings on motions for extension of time; and
>
> 5.   In the courts of appeals, only those documents designated as opinions of the court meet the definition of "written opinion."

<u>See</u> Exhibit C, hereto.

This Guidance, on which Plaintiff relies to ascertain class membership, is inherently subjective, not objective.  The Guidance defines written opinions as "any document issued by a judge or judges of the court, sitting in that capacity, that sets forth a reasoned explanation for a court's decision" and gives the "responsibility for determining which documents meet this definition [to] the authoring judge." Thus, it is within each authoring judge's subjective discretion to determine whether an order constitutes an opinion.  The only clear restriction the Guidance places on the authoring judge's discretion is that the definition "is not intended to include routine, non-substantive orders such as scheduling orders or rulings on motions for extension of time." As a result, tagging membership in the class to whether a PACER user paid for a "judicial opinion"

---

[6]     In the Motion, Plaintiff refers to this Guidance as the "Opinions Definition." <u>See</u> Motion, pp. 5, 18.

would likely require thousands, if not millions, of individual inquiries to determine whether the orders at issue were deemed opinions by the judges – an undertaking ill-suited for class treatment.

The subjective nature of the Guidance is further underscored by what it lacks. The Guidance does **not** provide that all orders on certain types of motions are opinions. Thus, a blanket determination cannot be made that all orders granting summary judgment, for example, are opinions without finding out from the authoring judges whether those orders contain a "reasoned explanation." Even more problematic are orders denying summary judgment, on motions to dismiss, and on a number of other types of motions for which judges may provide a brief or cursory rationale that may not constitute a "reasoned explanation" (i.e. orders on motions: for reconsideration; to compel and other discovery issues; for protective orders; to quash subpoenas; for leave to amend; for "emergency" temporary restraining orders, etc.). To identify the class members, the Court would have to make determinations as to whether those orders constitute opinions, as to each individual order.

In the Motion, Plaintiff asserts that there are orders of the same type available from PACER, some free and some not, and all contain a "reasoned explanation." See Motion, pp. 7-8. However, as just discussed, based on the Guidelines, whether a particular order meets the definition (i.e. contains a "reasoned explanation") is within the discretion of each authoring judge, regardless of the type of order. Thus, each order must be investigated to determine whether the judge considered it an opinion when filed. If the judge deemed the order an opinion and PACER charges for the order, class members may be identified if they paid for the order during the class period. If the judge did not consider the order an opinion, no class members would be identified based on that order because the Guidelines give the judges complete discretion to determine whether an order is an opinion or not. Even if the Court were to find that the judges do not have complete discretion under the Guidelines, Plaintiff would have to establish that an authoring judge who decided that an order was **not** an opinion failed to exercise his or her discretion reasonably based on the content of the particular order.[7] All of these individual considerations to identify class members who accessed "judicial opinions" render the proposed class definition unworkable.

---

[7]     Although a party with a degree of discretion under a contract must "exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties," Barseback Kraft AB v. U.S., 36 Fed. Cl. 691, 705 (1996), aff'd, 121 F. 3d 1475 (Fed. Cir. 1997), "the limit placed on a party's discretion is not great," Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1291 (11th Cir. 2001). In fact,

In the Motion, Plaintiff also contends that orders with the word "Opinion" in their title automatically fall within the definition of written opinion and should be available free from PACER.  See Motion, p. 6.  However, Plaintiff has not defined the class as including only those PACER users who paid to access orders with the word "Opinion" in their title.  Further, even if Plaintiff had defined the class in this way, as set forth above, see Section III. A. 1, Plaintiff has not identified an administratively feasible method to cull those particular orders from the databases. Additionally, as explained below, see Section III. A. 2. b., individual inquiries are necessary to determine whether a particular PACER user paid for the order during the class period.

Plaintiff also asserts that the Guidance expressly states that reports and recommendations ("R&Rs") and orders adopting or rejecting them are opinions.  See Motion, p. 8.   Plaintiff misinterprets the language of the Guidance.  See NVT Technologies, Inc. v. U.S., 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("When interpreting [a] contract, the document must be considered a whole and interpreted to harmonize and give reasonable meaning to all of its parts.  Any interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous").[8]  Plaintiff's interpretation reads out of the Guidance the definition that a written opinion must set forth a reasoned explanation for a court's decision, which the paragraphs listed thereunder, including paragraph 3, are intended to "clarify."   Additionally, despite the fact that the list of paragraphs is joined by the conjunction "and," Plaintiff's reading ignores paragraph 1 vesting the authoring judge with the authority to determine whether a document meets the definition of "written opinion."   Further, Plaintiff's argument renders superfluous paragraph 4 because an R&R and subsequent order could be non-substantive (e.g. discovery orders).  Moreover, accepting Plaintiff's construction, an R&R would always constitute an opinion if it contained "a reasoned explanation" even if rejected by the district court judge, an illogical interpretation.

---

"[u]nless no reasonable party . . . would have made the same discretionary decision . . ., it seems unlikely that [the party's] decision would violate the covenant of good faith . . ." Id. (quoting Sepe v. City of Safety Harbor, 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000)).

[8]      The substantive law that applies in interpreting alleged contracts with the Government is federal contract law, which has been developed by the Court of Appeals for the Federal Circuit and the Court of Claims.  See Seaboard Lumber Co. v. U.S., 15 Cl. Ct. 366, 369 (1988), aff'd 903 F.2d 1560 (Fed. Cir. 1990).  The Federal Circuit has exclusive jurisdiction over appeals from final decisions of district courts in Little Tucker Act cases, such as the one at bar.  See 28 U.S.C. § 1295(a) (2), (3).

Instead, when an order adopting an R&R is deemed an opinion by the authoring judge, the accompanying R&R is then designated as an opinion in CM/ECF.  See Skidgel Decl., ¶ 19.  Thus, for R&Rs, like all other orders, determining whether a PACER user paid for an opinion would require a determination as to whether the order adopting the R&R was deemed an opinion by the authoring judge. Even if the Court reads the Guidance as Plaintiff does, Plaintiff has not come forward with an administratively feasible way to access the R&Rs and related orders from PACER, see Section III. A. 1, or to avoid individualized inquiries in identifying class members that paid for the R&Rs and their orders during the class period, see Section III. A. 2. b.

Thus, because authoring judges have discretion to determine whether an order is an opinion and there are no objective criteria for this determination, an order-by-order analysis is necessary. Accordingly, the potential class definition is not ascertainable.

**b. Identifying PACER users that paid to download a judicial opinion requires individual considerations.**

Even assuming Plaintiff had a method to cull the orders it seeks from the databases and overcome the individual inquires required to determine which of those orders are opinions, additional individual assessment is necessary to identify the PACER users that paid to access the opinions.  There are approximately 2.1 million PACER accounts. See Skidgel Decl., ¶ 18.   When a PACER user downloads a document for which there is a charge, a billable transaction record is generated.  See Declaration of David Stone, PACER Service Center Manager, dated January 5, 2018 ("Stone Decl."), ¶ 3, attached hereto.  Thus, the first step in identifying class members that paid for opinions would be to search the 2.2 to 2.4 billion PACER billing transaction records for the opinions at issue.  However, even if there are matches, not all billable transactions result in charges to a PACER user.  See id.

Pursuant to the Fee Schedule, "[n]o fee is owed for electronic access to court data or audio files via PACER until an account holder accrues charges of more than $15.00 in a quarterly billing cycle.  See Exhibit A, ¶ 8.[9]  Thus, under the Fee Schedule, PACER users receive a fee waiver when they do not exceed $15.00 in charges in a billing quarter.  See Stone Decl., ¶ 4.  PACER users may also be otherwise exempted from paying PACER fees (i.e. educational institutions engaged in research and nonprofit organizations that sought and secured an exemption). See id.;

---

[9]   Since April 1, 2012, the threshold amount has been $15.00.  The threshold amount in the earlier part of the class period was $10.00.

Exhibit A, ¶ 9.  In fact, in 2015, 63 percent of PACER users did not pay anything for PACER use either because they did not exceed $15.00 in a quarter or because they were otherwise exempted from paying PACER fees (i.e. educational institutions or nonprofit organizations that had sought and secured exemptions).  See Stone Decl., ¶ 5.  In 2016, that number was 64 percent.  Id.  In 2015 and in 2016, 81 percent of PACER users had some or all of the fees waived, not counting the free downloading of those portions of documents that exceeded thirty (30) pages.  See Stone Decl., ¶ 6.

PACER records for Plaintiff's account are illustrative.  Although there are billable transactions for Plaintiff's account during the class period, see Exhibit D, the invoices reflect that there were **no** billed charges for six (6) of the nine (9) billing cycles during which Plaintiff had a PACER account in the class period, see Exhibit E.  Therefore, in order to determine whether a PACER user was charged for a document that generated a billable transaction, the user's account would need to be pulled up to determine whether the user received a fee waiver for the billing quarter during which the document was downloaded or was otherwise exempt from paying PACER fees.  See Stone Decl., ¶ 7.  In addition to these individual inquiries, if a PACER user were charged, a determination would need to be made as to whether the user paid during the class period.

Accordingly, the number of individualized inquires required just to identify class members renders the proposed class definition unworkable. Therefore, class certification should be denied.

**B. Plaintiff has Not Met the Requirements of Rule 23(b)(3)**

In addition to the fact that Plaintiff has failed to meet the implicit requirement of Rule 23, it has also not satisfied Rule 23(b). Plaintiff proceeds only under Rule 23(b)(3).  See Motion, pp. 2, 16.  Even where all requirements of Rule 23(a) are met, Rule 23(b)(3) requires Plaintiff to establish that "[1] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that class action is superior to other available methods for the fair and efficient adjudication of the controversy."  See Fed. R. Civ. P. 23(b)(3).

*1. **Individualized questions predominate over common issues.***

For common issues of law or fact to predominate over individualized questions "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole,

must predominate over those issues that are subject only to individualized proof."  See Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1234 (11th Cir. 2000). More specifically:

> Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief. On the other hand, common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. Certification is inappropriate if the plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims. The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant.

Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009).[10]  **"Rule 23(b)(3)'s predominance criterion is far more demanding than Rule 23(a)."**  Comcast, 569 U.S. at 34 (emphasis added).

While Plaintiff lists several "common factual and legal issues," see Motion, p. 13, there is little argument in the Motion that these issues ***predominate*** over individualized inquiries.  Id. at pp. 16-17.  In reality, there is no predominance here because to establish liability, Plaintiff must show that each order at issue constitutes an opinion and that each class member incurred damage as a result of downloading an opinion.

### a.  Whether an order constitutes a judicial opinion is not subject to generalized proof.

"Because predominance relates to individual issues regarding liability, the elements of the underlying cause of action are critical."  Randolph, 303 F.R.D. at 695.  Here, Plaintiff asserts claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and illegal exaction (Count III).  See Amended Compl.  For all counts, Plaintiff must establish that the orders for which class members paid are opinions.  To meet this evidentiary burden, Plaintiff must show that the authoring judges determined that the orders at issue were

---

[10]     The way that Plaintiff has defined the proposed class results in overlap between ascertainability, as discussed above, see Section III. A., and the predominance requirements.  A class is ascertainable when the class members can be identified in a "manageable process that does not require much, if any, individual inquiry."  See Karhu, 621 Fed. App'x 787-88. Rule 23(b)(3), on the other hand, encompasses management concerns with the class ***after*** class members have already been identified, such as whether the class members are entitled to relief.  Id. at 950.

opinions when filed, and then not designated as such in PACER.  A corollary to this is that the United States may put forth evidence as to each order to show that the authoring judge did not consider the order to be an opinion, when filed.

As discussed fully above, see Section III. A. 2. a, it is within each authoring judge's subjective discretion to determine whether an order constitutes an opinion.  There is no objective criteria in the Guidance for this determination nor are there lists of orders categorized as opinions.  As such, Plaintiff must establish that each order was deemed an opinion by the authoring judge at the time the order was filed.  Establishing this for one order does nothing to establish it for another order. Indeed, the definition of opinion from the Guidance is itself subjective as to what constitutes a "reasoned explanation."

Thus, whether an order is an opinion is not subject to class-wide proof.  Accordingly, individualized concerns predominate over common issues.  See, e.g., Klay, 382 F.3d at 1264-65, 67 (holding that the district court abused its discretion in certifying class where individual issues of fact predominated to establish breach of contract); Miller v. Wells Fargo Bank, N.A., 2017 WL 698520, at *14-*15 (S.D. Fla. Feb. 22, 2017) (holding that common issues of fact did not predominate in breach of contract action where putative class members could not rely on common proof).

**b.  Plaintiff has failed to establish a method for measuring damages class-wide.**

"To prove predominance, plaintiffs must show that damages resulting from individual injuries are measurable "on a class-wide basis" using a common methodology.  See Morales v. Progressive Casualty Ins. Co., 2014 WL 12531280, at *7 (S.D. Fla. Nov. 26, 2014 (Scola, J.) (quoting Comcast Corp., 133 S.Ct. at 1430).  In Comcast, 569 U.S. 27, the Supreme Court made clear that like Rule 23(a), Rule 23(b) requires "evidentiary proof." Id. at 33.  For purposes of Rule 23(b)(3), Plaintiff must come forward with a model that measures damages attributable only to the plaintiff's theory of liability and that establishes that damages are measureable across the entire class.  See id. at 35.  While Comcast does not require Plaintiff to provide exact calculations, see id. at 35, or to have an expert damages model, see Brown, 817 F.3d at 1239, Plaintiff must establish the "damages are capable of measurement on a class-wide basis."  See Comcast, 569 U.S. at 34.  This is particularly so where, as in this case, damages are an element of Plaintiff's claims.  See Morales, 2014 WL 12531280, at *7 (Scola, J.) (denying class certification and holding that "[e]ven if Morales were not obligated to provide a formula or method for calculating damages on a class-

wide basis, he must demonstrate that the individual issues do not predominate with respect to the existence of damages which is an essential liability element of all Morales' claims"); see also San Carlos Irrigation & Draining Dist. v. U.S., 877 F.2d 957, 959 (Fed. Cir. 1989) (recognizing that damages are an element of a breach of contract action); Aerolineas Argentinas v. U.S., 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) ( An illegal exaction claim exists when "the plaintiff has paid money over to the Government, either directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant . . ." ).

Here, Plaintiff has not come forward with **any** method to measure the putative class members' damages on a class-wide basis.  See Motion, p. 17.  Plaintiff asserts only that it seeks refunds in the amounts PACER users paid for access to documents constituting judicial opinions. See id. Thus, this is a case where individual damages defeat predominance because computing them "will be so complex, fact-specific, and difficult that the burden on the court system will simply be intolerable."  Brown, 817 F.3d at 1240 (quoting Klay, 382 F.3d at 1260).

As discussed above, see Section III. A. 2. b., individual inquiries are required to determine whether putative class members paid to access opinions during the class period.  These include analyzing each PACER user's account that downloaded an opinion to determine whether the user had fee waivers or exemptions during the class period.  Further, even if the user paid PACER charges during the class period, an analysis would need to be conducted to determine what **portion** of the payment is attributable to the opinions that the user downloaded as opposed to other documents and dockets accessed during the billing cycles.[11]

Plaintiff has not proposed how it would calculate refunds on a class-wide basis without causing individual damage calculations to overwhelm the litigation.  This is particularly

---

[11]     Notably, in addressing predominance on the issue of damages in Nat'l Veterans, 235 F.Supp.3d 32, the court there found that calculating the amount of damages in that case would be ministerial **because the amount would be proportional to the fees the plaintiffs paid "rather than depending on the types of documents they obtained."** Id. at 44 (emphasis added).   The court reached this conclusion because the plaintiffs' legal theory is that the Judiciary was required to set a lower rate for all fees that corresponded to PACER funding needs and that defendant would be liable to any class member who paid the allegedly illegal higher rate.  Id.  By contrast, in the instant case, the fees paid are the direct result of the types of documents the putative class members obtained (the judicial opinions) and thus individualized rather than capable of apportionment across an entire class.

problematic given the fact that there are presently over 2.1 million PACER accounts and 2.2 to 2.4 billion PACER billable transactions.

Accordingly, due to the individual liability inquiries as well as the fact that Plaintiff has not come forward with a model for determining damages on a class-wide basis, class certification should be denied.  See Bussey, 562 Fed. App'x at 790-91 (reversing order certifying class and directing district court, on remand, "to conduct the 'rigorous analysis' required by the Supreme Court's Comcast decision regarding whether calculation of class members' damages would necessitate such individual inquiry that individual issues would predominate over common ones") (footnote call number omitted); Randolph, 303 F.R.D. at 698 (denying class certification where the plaintiff failed to demonstrate that damages were measurable on a class-side basis).

### 2. Superiority is not satisfied.

The superiority analysis is "intertwined with predominance analysis; when there are no predominant commons issues of law or fact, class treatment would be either singularly inefficient . . . or unjust."  Klay, 382 F.2d at 1269 (citation omitted).  In addition, "severe manageability problems are a prime consideration that can defeat a claim of superiority."  Perez v. Metabolife Intern., Inc., 218 F.R.D. 262, 273 (S.D. Fla. 2003) (citing Castano v. American Tobacco Co., 84 F.3d 734, 748 (5th Cir. 1996).

Here, commons issues of law and fact do not predominate, see Section III. B. 1.  Therefore, Plaintiff has failed to meet its burden of establishing superiority.  See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1180-81 (11th Cir. 2010) (noting that "the less common the issues, the less desirable a class action will be a vehicle for resolving them").  In addition, there are difficult and inefficient management problems with this case in culling the orders that constitute the proposed opinions, determining whether the orders are opinions, and ascertaining whether PACER users were charged to download the orders at issue. Although combining related cases into a single class action can save judicial economy and effort, the resources saved here would be far outweighed by the resources expended to manage this case.

## IV.    CONCLUSION

For the reasons set forth above, the Court should deny the Motion for Class Certification.


Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

By:    /s/Alicia H. Welch
ALICIA H. WELCH
Assistant U.S. Attorney
Florida Bar No. 100431
Email: Alicia.Welch@usdoj.gov
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Tel: (305) 961-9370
Fax: (305) 530-7139

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/Alicia H. Welch</u>
Alicia H. Welch, AUSA

<u>**SERVICE LIST**</u>

Nicole W. Giuliano
nicole@giulianolaw.com
GIULIANO LAW, P.A.
500 E. Broward Blvd.
Suite 1710
Fort Lauderdale, FL  33394

John Van Ness
tvanness@vanlawfl.com
VAN NESS LAW FIRM, PA
7369 Sheridan Street
Suite 203
Hollywood, FL  33024

*Attorneys for Plaintiff*

**Notices of Electronic Filing generated by CM / ECF**