Case No. ___ - _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT
_____

THEODORE D'APUZZO, P.A.,

*Petitioner/Plaintiff*

v.

THE UNITED STATES OF AMERICA,

*Respondent/Defendant.*
_____

From an Order Denying Class Certification by the United States District Court for the Southern District of Florida, Case No. 0:16-62769-CV-RNS

## PETITION FOR PERMISSION TO APPEAL THE DENIAL OF CLASS CERTIFICATION PURSUANT TO FED. R. CIV. PROC. 23(f)

Nicole W. Giuliano
**Giuliano Law, P.A.**
500 E. Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394
Tel: (954) 848-2940
nicole@giulianolaw.com

Morgan L. Weinstein
**Weinstein Law, P.A.**
5216 Van Buren Street
Hollywood, FL 33021
Tel: (954) 540-2755
morgan@mlwlegal.com

*Counsel for Petitioner/Plaintiff*

**Exhibit A**

Case No. ___ - _____

*Theodore D'Apuzzo, P.A. v. United States of America*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Petitioner, pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, submits this Certificate of Interested Persons and Corporate Disclosure Statement.

Petitioner, Theodore D'Apuzzo, P.A., is a Florida corporation with no parent corporation, and no corporation owns 10% or more of its stock.

The following individuals and entities may have an interest in the outcome of this appeal:

1.  D'Apuzzo, Theodore

2.  Giuliano, Nicole W.

3.  Giuliano Law, P.A.

4.  Greenberg, Benjamin G.

5.  Scola, Jr., The Honorable Robert N.

6.  Theodore D'Apuzzo, P.A.

7.  The United States of America

8.  Van Ness, J. Anthony

9.  Van Ness Law Firm, PLC

10. Welch, Alicia H.

11. Weinstein, Morgan L.

12. Weinstein Law, P.A.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................C1-1

TABLE OF CONTENTS................................................................ i

TABLE OF CITATIONS ................................................................ ii

I.      INTRODUCTION ................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................2

III.    QUESTION PRESENTED AND RELIEF SOUGHT ...................................6

IV.     REASONS WHY THE APPEAL SHOULD BE ALLOWED ......................7

V.      THE FACTS NECESSARY TO UNDERSTAND THE QUESTION PRESENTED AND SUPPORTING ARGUMENT ....................................10

   A. The Court Erred in Finding the Proposed Class Was Not Ascertainable......10

      1. The Official Guidance Was Not Intended to be "Inherently Subjective"................................................................11

      2. Even Assuming the Official Guidance is "Inherently Subjective," the Court Erred by Refusing to Adopt a Modified Definition ......................14

   B. Predominance is Satisfied as to Both Liability and Damages......................16

      1. The Court Erred in Ruling That Predominance Was Not Met as to Liability ................................................................16

      2. Predominance Also is Satisfied With Respect to *Damages*....................18

   C. The Court Erred in Ruling That the Superiority Element Was Not Met.......21

VI.     CONCLUSION................................................................22

CERTIFICATE OF SERVICE ................................................................22

CERTIFICATE OF COMPLIANCE................................................................23

# <u>TABLE OF CITATIONS</u>

**Cases**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688 (S.D. Fla. 2017) ..................................................................................15

*Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003).............19

*Arthur v. Allen*, 452 F.3d 1234 (11th Cir. 2006) ........................................................2

*Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt.*, 385 F. Supp. 2d 1272 (M.D. Fla. 2005)...................................................................................11

Bussey v. Macon Cty. Greyhound Park, Inc., 562 F. App'x 782 (11th Cir. 2014)...................................................................................................10

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015).................................................17

*Dear v. Q Club Hotel, LLC*, 2016 WL 7477734 (S.D. Fla., 2016) .........................20

*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011)...............................2

*Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409 (Fed. Cir. 1988)......13

*Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271 (M.D. Fla. 2017).......16

*In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606 (M.D. Fla. 2006) ........................10

*Kendrick v. Standard Fire Ins. Co.*, 2010 WL 11488487 (E.D. Ky. 2010).............17

*Langland ex rel. M.L. v. Sec. of Health and Human Services*, 2011 WL 802695 (Fed. Cl. 2011)............................................................................8

*Loveladies Harbor v. United States*, 27 F.3d 1545 (Fed. Cir. 1994).......................14

*Matamoros v. Starbucks Corp.*, 699 F.3d 129 (1st Cir. 2012) ................................15

*Owens v. Metropolitan Life Ins. Co.*, 323 F.R.D. 411 (N.D. Ga. 2017).................17

*Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015).................................................................................................21

*Pettway v. Harmon Law Offices, P.C.*, 2005 WL 2365331 (D. Mass. 2005)..........20

*Pickett v. IBP, Inc.*, 2001 WL 34886460 (M.D. Ala. 2001) ....................................19

*Prado-Steiman v. Bush,* 221 F.3d 1266 (11th Cir. 2000) ............................ 1, 7, 8, 9

*Rodriguez v. Flowers Foods, Inc.*, 2016 WL 7210943 (S.D. Tex. 2016)...............15

*See Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301 (S.D. Fla. 2017)......15

*Timber Prods. Co. v. U.S.*, 103 Fed. Cl. 225 (2011) ...............................................12

## Statutes

"Little Tucker Act," 28 U.S.C. 1346 .......................................................................14

E-Government Act of 2002........................................................................... passim

## Rules

Federal Rule of Civil Procedure 23 .............................................................. passim

## I.  INTRODUCTION

Petitioner and plaintiff below, Theodore D'Apuzzo, P.A. ("Plaintiff"), sought certification of a class of PACER users who paid to access judicial opinions during the applicable 6-year class period, contrary to the E-Government Act of 2002 ("E-Government Act") and the express terms of PACER's contracts with its users, under which opinions should be accessible <u>free</u> of charge. Respondent, The United States of America ("Government"), *conceded* the requirements of Federal Rule of Civil Procedure 23(a) – including no fewer than seven "common" issues – and the district court agreed Rule 23(a) was satisfied.

Nonetheless, the court denied certification, finding that the class is not ascertainable, and that predominance and superiority under Rule 23(b)(3) were not met. The linchpin of these findings was the court's conclusion that identifying mislabeled "opinions" would involve an "inherently subjective" standard. The court also ruled that the "individual review" of billing records implicated predominated common issues as to damages. *Order*, **Exhibit A** hereto.[1]

As permitted by Rule 23(f), and under the "guideposts" from *Prado-Steiman v. Bush,* 221 F.3d 1266 (11th Cir. 2000), an interlocutory review by this Court of the denial is warranted. The ruling amounts to an abuse of discretion because it was bottomed on the court's erroneous legal conclusion that the Government's <u>own</u>

---

[1] Factual materials referenced in this petition were presented to the district court.

definition of "opinions" is too "inherently subjective" to support a class.[2] Moreover, even if a subjective standard governed, the court erred by refusing to narrow the "subjective" aspects of the Government's definition or adopt a different definition based on objective criteria. As well, the court's predominance ruling as to damages is contrary to clear precedent that "individualized" damages issues, including manual review of records, do not warrant denial of certification.

The Order effectively sounds a death knell here, given Plaintiff's individual damages of $0.80, justifying review now, rather than later. Even if Plaintiff could proceed on an individual basis, immediate review in this case, which implicates issues important to the public, would save both the parties and the district court the time and expense of litigating the matter through trial on an individual basis, only to possibly do so again on a class basis.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The E-Government Act, unanimously passed by the House and Senate in 2002, mandated that by April 2005, all federal courts, including district and

---

[2] "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in reaching its decision, or makes findings of fact that are clearly erroneous." *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) (internal quotations and alterations omitted); *see also Arthur v. Allen*, 452 F.3d 1234, 1243 (11th Cir. 2006), *modified on reh'g on other grounds,* 459 F.3d 1310 (11th Cir. 2006) ("[W]e consider whether the district court's decision was based on an erroneous legal conclusion because a district court by definition abuses its discretion when it makes an error of law.").

bankruptcy courts, furnish the public with "[a]ccess to the substance of all written opinions issued by the court…." *Id.* § 205(a)(5).

Consistent with this, in 2005 PACER began informing its customers that henceforth access to opinions would be free. For instance, a July 2005 PACER announcement's main headline was, "**NEW! Free Written Opinions**," and stated that "In the spirit of the E-Government Act of 2002, modifications have been made to the District Court CM/ECF system to provide our customers with access to written opinions free of charge…." This "free" PACER opinions access was communicated in numerous other ways, such as PACER "user manuals," which contained statements like "Court opinions are offered at no charge." Indeed, PACER users are still told in the very account registration process that "Judicial opinions accessed via PACER will not generate a charge." Even more significantly, the Electronic Public Access Fee Schedule ("Fee Schedule"), which officially governs PACER costs, states, "No fee is charged for access to judicial opinions," which text appears under the headings of "**Free Access and Exemptions**" and **"Automatic Fee Exemptions."** In short, there can be no real dispute that, since at least 2005, PACER users have had a *contractual* entitlement to free opinions.[3]

---

[3] This is true, even assuming the court's correctness that the E-Government Act itself did not "mandate free access" to opinions, i.e., that it only mandated "public" access to opinions.

The E-Government Act did not define "opinions," but in November 2004, the Administrative Office of the U.S. Courts, the judicial body that administers PACER, issued a memorandum to all federal courts, acknowledging that the Act "places specific demands on the judiciary," and explaining which documents should be designated as "opinions":

> For the purposes of the E-Government Act of 2002, the official guidance is that "written opinion" is defined as, "any document issued by a judge or judges of the court, sitting in that capacity, that sets forth a reasoned explanation for a court's decision." This definition is clarified by the following points:
>
> 1. The responsibility for determining which documents meet this definition rests with the authoring judge, and the determination should be made at the time the document is filed;
>
> 2. The decision as to whether a document meets this definition is not the same as the decision about whether an opinion is to be published;
>
> 3. The definition is expressly intended to cover reports and recommendations issued by magistrate judges at such time as any action is taken by a district judge on a report and recommendations issued by a magistrate judge, and also includes a summary order adopting such report and recommendations;
>
> 4. The definition is not intended to include routine, non-substantive orders such as scheduling orders or rulings on motions for extension of time; and
>
> 5. In the courts of appeals, only those documents designated as opinions of the court meet the definition of "written opinion."

Despite PACER users' undisputed entitlement to free opinions access, and this "Official Guidance," however, PACER users routinely have been, and continue

4

to be, charged to access documents that by *any* objective reading constitute "opinions" under the Official Guidance.[4] Indeed, Plaintiff filed a declaration below with over 150 sample mislabeled opinions from the Southern District of Florida and other courts from every judicial circuit. Among these were numerous documents containing "opinion" in their title or referenced as such in their body; dozens of lengthy, substantive rulings such as on motions for summary judgment and motions to dismiss; and magistrate judges' "reports and recommendations" and orders adopting same, both of which the Official Guidance states are "expressly intended" to be "opinions."

In 2016, Plaintiff, a law firm, noticed that it was charged by PACER to access documents constituting opinions under the Official Guidance, which should have been free. Plaintiff subsequently filed this putative class action on November 22, 2016, seeking to remedy what it regarded as a clear violation of the E-government Act's mandate and PACER's contractual terms. The complaint included three claims: breach of contract, breach of implied covenant of good faith and fair dealing, and illegal exactions. On February 17, 2017, Plaintiff filed an amended complaint, with the same three claims, and the Government moved to dismiss on March 2, 2017. Shortly after, on March 13, 2017, the Government also

---

[4] Ironically, and illustrative of the ongoing nature of this problem, the very Order at issue here was <u>not</u> marked as an "opinion," thus requiring $0.60 for PACER access.

moved for a stay of discovery pending a ruling on the motion to dismiss, which the court granted.

The case remained stayed until September 25, 2017, when the court issued an order <u>denying</u> the motion to dismiss in its entirety. In allowing all three putative class claims to continue, notably the court rejected the Government's argument that PACER usage does not entail a contractual relationship, ruling that the "PACER contract and the attendant Fee Schedule bear the hallmarks of 'clickwrap' contracts that are routinely formed over the Internet," which the court stated are "valid and enforceable contracts."

Discovery by both parties ensued, and on December 1, 2017, Plaintiff moved for class certification. The Government filed its opposition on January 5, 2018, which conceded Rule 23(a)'s requirements, but claimed that the class was not ascertainable, that individual issues predominated over common ones, and that the superiority element was not satisfied. Plaintiff filed a reply on January 17, 2018, and with leave the Government filed a sur-reply on February 2, 2018. The Court issued the Order denying certification on April 13, 2018.

## III.   QUESTION PRESENTED AND RELIEF SOUGHT

Whether the court's denial of class certification was in error, where the denial was based on findings that the class is not ascertainable, and that predominance and superiority under Rule 23(b)(3) were not met, which findings were bottomed on the

court's conclusion that whether a document is an "opinion" under the Government's <u>own</u> definition is an "inherently subjective" question.

Plaintiff respectfully requests that the Court grant this petition for permissive appeal under Rule 23(f), for the reasons identified below.

## IV.   REASONS WHY THE APPEAL SHOULD BE ALLOWED

Interlocutory review of the Court's denial is supported by all of the "guideposts" of *Prado-Steiman*, 221 F.3d 1266

First, the court's refusal to certify the proposed class – and, indeed, seemingly *any* class – effectively acts as a "death knell" here, given Plaintiff's individual damages of $0.80. While Plaintiff's ultimate goal in this case was to ensure the public's free access to federal court opinions, per the E-Government Act's mandate and PACER's contractual terms, the "denial of class status means that the stakes [may be] too low for the named plaintiff[ ] to continue…." *Id.* at 1274.

Second, the denial has a *substantial* weakness, as the findings on ascertainability, predominance, and superiority were bottomed on the court's conclusion that identifying mislabeled "opinions" under the Government's <u>own</u> "Official Guidance" involves an "inherently subjective" standard. That conclusion is not borne out by the Official Guidance itself, but even if it were correct, the court still erred by refusing to narrow the Official Guidance or adopt an alternate definition based on objective criteria. And, this conclusion was inconsistent with

the court's prior decision on the Government's motion to dismiss where, in denying the motion in its entirety, it ruled that Plaintiff's complaint stated valid claims, including for "breach of the implied covenant of good faith and fair dealing." The court characterized this claim as that "an implied covenant existed in the PACER contract pursuant to which the Government should have implemented safeguards to ensure free access to judicial opinions via PACER, so as to not deprive PACER users of this contractual benefit," (quotations omitted) and that the claim "focuses on the Government's <u>failure</u> to adequately exercise the discretion afforded it under the PACER contract to insure proper designation of judicial opinions as such." In denying certification, the court in essence flipped this *limitation* on "discretion" on its head and allowed the Government to use it as a shield against certification, by ruling that the Government's own Official Guidance is too "inherently subjective" to support a class.

Third, the Order involves issues that are "important to the particular litigation as well as important in itself," including because "the lawsuit involves a governmental entity," and "has a strong public interest component." *Id.* at 1275. Here, of course, Respondent is the Government, and the "strong public interest component" is public access to opinions. The enhancement of such access was one of the primary purposes behind the E-Government Act. *Langland ex rel. M.L. v. Sec. of Health and Human Services*, 2011 WL 802695,*4 (Fed. Cl. 2011)

("Congress reaffirmed the public's right to access to judicial records when it passed the E–Government Act of 2002, which instructed the judiciary to make its records electronically accessible to the public. The E–Government Act affirms that the public has an interest in obtaining access to court filings and decisions….").

Fourth, the procedural posture below supports interlocutory review. While the parties were engaged in discovery prior to the denial, the scheduling order, issued months before the denial, assumed fact discovery would be completed in August 2018, dispositive motions heard by September 2018, and a trial in 2019. Even if denial did not serve as a "death knell," then, it would be grossly inefficient for both the parties and the district court to continue litigating this matter on an individual basis for likely a year or more, only to possibly do so again on a class-wide basis. Moreover, the denial was bottomed on a *legal* conclusion – that the Official Guidance involves an "inherently subjective" standard – that would not be affected by "new facts uncovered through discovery." *Prado-Steiman*, 221 F.3d at 1276.

Fifth, the denial was absolute, in that it was neither "conditional" nor made "subject to revision at a later stage in the case." Likewise, there is no reasonable likelihood that "future events" may render immediate review less appropriate.

Finally, the Committee Notes to Rule 23 state that permissive appeals under it are "most likely to be granted when the certification decision turns on a novel or unsettled question of law." *Id.* at 1272. The denial implicates a novel legal

question, namely how "opinions" for purposes of the E-Government Act's mandate and PACER's contractual terms should be defined.

## V. THE FACTS NECESSARY TO UNDERSTAND THE QUESTION PRESENTED AND SUPPORTING ARGUMENT

### A. The Court Erred in Finding the Proposed Class Was Not Ascertainable

This Court's precedent provides that a class is ascertainable and administratively feasible if its members can be identified "by reference to <u>objective</u> criteria," provided the process "does not require much, if any, individual inquiry." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787-88 (11th Cir. 2014) (emphasis added). In addition, "the definition of the class is a matter within the broad discretion of the district court." *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 623 (M.D. Fla. 2006) (quotations omitted).

Consistent with these principles, Plaintiff framed the putative class, and in particular "opinions" for class purposes, as defined either by the Government's own "Official Guidance," or an alternate definition based on objective criteria, such as certain types of rulings, minimum length, case law citation, or a combination thereof. In opposing certification, the Government attacked its own Official Guidance, claiming it created an "inherently subjective" standard under which "fundamentally, it is unclear what an opinion is."

It is odd – to say nothing of unfair – for the Government to use its own definition as a "shield" in this manner. But that is exactly what it did, and the court

allowed it, by accepting the argument that the Official Guidance is "inherently subjective," and thus concluding that the class was not ascertainable. The "inherent subjectivity" conclusion was in error, as it is not supported by the Official Guidance's language. But, even assuming that the Official Guidance *is* "inherently subjective," the court still erred by refusing to adopt a definition either narrowing that subjectivity or based on objective criteria.

    1.  <u>The Official Guidance Was Not Intended to be "Inherently Subjective"</u>

      The conclusion that the Official Guidance created an "inherently subjective" standard that precludes certification is belied by the E-Government Act's mandate, which applied to "<u>all</u> written opinions." Although Congress did not define "opinions" in the Act, it also gave *no* indication that the mandate as to opinions was to be applied by the thousands of federal judges in an "inherently subjective" (and therefore inconsistent) manner. That "opinions" should be determined by an *objective* standard also is supported by the Official Guidance itself, which used language like "requirements" and "compliance"; the Fee Schedule, under which opinions are unconditionally "free" and "automatically" exempted from charges; and other sources, such as cases noting the "requirement of the E-Government Act of 2002 that all written opinions be publicly accessible." *Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt.*, 385 F. Supp. 2d 1272, 1278 n.4 (M.D. Fla. 2005).

The court also did not address the Official Guidance's language that "<u>In the courts of appeals</u>, only those documents designated as opinions of the court meet the definition of 'written opinion.'" Under this language, "opinions," in the courts of appeals *only*, are limited to those documents so designated by the authoring court. The court improperly extended this language to the district and bankruptcy courts, however, when it ruled that those courts' "opinions" designations are shielded from review because they are "inherently subjective."[5]

The court's conclusion also cannot be reconciled with the law cited by Plaintiff below – nowhere addressed in the Order – that where a party has "discretion" in the fulfillment of contractual duties, that party is under an implied obligation to "exercise his discretion reasonably and may not do so arbitrarily or capriciously." *Timber Prods. Co. v. U.S.*, 103 Fed. Cl. 225, 243 (2011). The court agreed with this principle in denying the Government's motion to dismiss, there noting that this implied obligation "prevent[s] a contracting party from engaging in conduct which … frustrates the other party's rights to the benefits of the contract" (citing a case). Applying this to Plaintiff's complaint, the court stated that "an implied covenant existed in the PACER contract pursuant to which the Government should have implemented safeguards to ensure free access to judicial opinions via PACER, so as to not deprive PACER users of this contractual

---

[5] Due to this language, Plaintiff's proposed class was expressly confined to mislabeled "opinions" from the federal district and bankruptcy courts only.

benefit." (quotations omitted). And, Plaintiff below provided over 150 examples of arbitrary or objectively unreasonable failures to designate rulings as "opinions," such as orders on summary judgment, motions to dismiss, and other lengthy, substantive ones that are "opinions" under any reasonable reading of the term. These included dozens of the same *types* of "orders," sometimes by the same authoring judge, with some being designated as "opinions" and others not, despite there being no objective or demonstrable difference in terms of substantive content or length.

Nonetheless, in denying certification the court ruled that the Official Guidance is too "subjective" to support ascertainability. In this vein, it observed that the E-Government Act did not define "opinions," as already noted. But, this lack of an "opinions" definition in the Act does not exculpate the Government because, as a <u>contractual</u> matter, it had an implied duty to define "opinions" in a reasonably objective and clear manner so that it could be applied consistently – or, at the very least, to "implement safeguards" to accomplish the same purpose, as the court found in denying the motion to dismiss – in order to not deprive PACER users of the contractual benefit of "free" opinions, which benefit has existed since 2005.[6] As such, the court erred in treating the Act's lack of an "opinions" definition

---

[6] To the extent the PACER contract is deemed ambiguous, it should be construed against its drafter, the Government. *Fort Vancouver Plywood Co. v. U.S.,* 860 F.2d 409, 414 (Fed. Cir. 1988).

as *carte blanche* to the Government in defining "opinions," as the Government had a contractual obligation, *independent* from the Act, to do so in a reasonably objective and not arbitrary manner.[7] In light of this same contractual obligation, the court likewise erred in effectively absolving the Government from liability for mislabeled "opinions" based on the "inherent subjectivity" of the Official Guidance.

This latter point is particularly true in regard to magistrate judges' "reports and recommendations." The Official Guidance plainly states that it is "expressly intended" to cover such reports and recommendations, as well as "summary orders" adopting them. Thus, even assuming the Official Guidance is in some way "subjective," clearly *no* subjective discretion under it was meant to apply to these documents, since they are "expressly intended" to be designated as "opinions." Yet, these documents were swept in with all the others under the court's broad "inherently subjective" broom.

2. Even Assuming the Official Guidance is "Inherently Subjective," the Court Erred by Refusing to Adopt a Modified Definition

The court's ascertainability ruling was founded on its conclusion that the Official Guidance is "inherently subjective." As discussed above this conclusion

_____

[7] The certification papers noted that the applicable "Little Tucker Act," 28 U.S.C. 1346 renders the Government liable for damages for violations of a "substantive right created by some money-mandating constitutional provision, statute or regulation … **or** an express or implied contract with the United States." *Loveladies Harbor v. U.S.*, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (emphasis added).

was unwarranted, but even if it were correct, the court should have adopted an alternate definition instead of "throw[ing] out the baby with bath water." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) (rejecting ascertainability challenge based on defendant's claim that proposed definition might not encompass every member). It is well settled that definitional problems "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis," *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 696 (S.D. Fla. 2017), and that a class is ascertainable so long as "it is circumscribed by some objective set of criteria." *Rodriguez v. Flowers Foods, Inc.*, 2016 WL 7210943, *4 (S.D. Tex. 2016) (emphasis added).

Indeed, the court even acknowledged that "[c]ertainly, the E-Government Act could have included a definition for written opinions, or even a list of documents, that **would make the intended documents objectively identifiable**." Under the court's "broad discretion" in fashioning the scope of a class, it could have accomplished this same purpose by either narrowing the Official Guidance to make it not "subjective," or adopted a different definition based on objective criteria. *See Mohamed v. American Motor Co., LLC*, 320 F.R.D. 301, 310 (S.D. Fla. 2017) ("District Courts are permitted to limit of modify class definitions to provide the necessary precision.") (quotations omitted); *Herman v. Seaworld Parks*

*& Entm't, Inc.*, 320 F.R.D. 271, 285 (M.D. Fla. 2017) ("To the extent that the class definitions should be refined to more clearly cover the class of individuals affected by SeaWorld's alleged conduct, the Court has discretion to redefine the class to provide the necessary precision.").[8]

### B. Predominance is Satisfied as to Both Liability and Damages

#### 1. The Court Erred in Ruling That Predominance Was Not Met as to Liability

Based on its finding that the Official Guidance is "inherently subjective," the court ruled that "individual issues of fact" predominated over common issues. But, as discussed above, the court erred in finding that the Official Guidance is "inherently subjective," or alternatively in refusing to narrow it or adopt a definition based on objective criteria. This error, in turn, extended to the court's predominance conclusion, for with a definition of "opinions" in place, members' identification would be a relatively simple matter of reviewing CM/ECF "orders" to determine which should have been, but were not, designated as opinions.

In fact, Plaintiff offered a proposed mechanism in the existing CM/ECF websites of the federal district and bankruptcy courts for isolating "orders," which

---

[8] That the court could have fashioned a definition based on objective criteria, such as length, also is supported by the uncontroverted fact that the Government mid-litigation *changed* the "opinions" designation of numerous sample mislabeled rulings that Plaintiff attached to its complaint, claiming they reflected "docketing errors at the court level…." Plaintiff selected those samples based on the Official Guidance, and in changing their designation clearly the Government agreed that those rulings were as "opinions," whether under the Official Guidance or some other objective standard.

could then be reviewed to identify mislabeled "opinions."[9] While this review undoubtedly would be laborious, "time and labor alone, even where *significant*, is not a reason to forego proceeding via a class." *Kendrick v. Standard Fire Ins. Co.*, 2010 WL 11488487, at *8 (E.D. Ky. 2010) (emphasis added) (rejecting ascertainability challenge based on alleged burden in reviewing records).

Nor does the need for a manual review of the "orders" in CM/ECF render the process administratively unfeasible, as the Order insinuates. This is because feasibility does not hinge on *whether* a manual review of records is required, but rather on the *level* of review involved. Stated another way, this is not a case that would, for instance, require "mini-trials to determine membership." *Owens v. Metropolitan Life Ins. Co.*, 323 F.R.D. 411, 417 (N.D. Ga. 2017). To the contrary, with a definition in place only a cursory review of the "orders" would be necessary to identify mislabeled opinions, and this is no obstacle to certification. *Id.* at 417 (rejecting ascertainability and feasibility challenges, despite that "individual records will have to be examined in order to determine class membership," where identification would involve a "ministerial review" rather than an "arduous individual inquiry") (quotations omitted); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 171 (3d Cir. 2015) ("[T]he size of a potential class and the need to review

---

[9] The court did not address this mechanism, other than alluding generically to potential "technological concerns" in identifying members, as well as an "assumption" that "the over 1.1 billion PACER documents over 200 court databases nationwide are easily searchable."

individual files to identify its members are not reasons to deny class certification. To hold otherwise would seriously undermine the purpose of a Rule 23(b)(3) class….") (quotations and citations omitted).

Finally, the court's errant "inherently subjective" conclusion further affected its predominance analysis in that it led the court to rule that "Plaintiff's claims are not subject to determination with generalized proof." The Order did not address the law cited in the certification papers that all of Plaintiff's putative class claims – breach of contract, breach of implied covenant of good faith and fair dealing, and illegal exactions – *are* of the type susceptible to "generalized proof." For instance, Plaintiff cited cases recognizing that whether a defendant violates the implied covenant of good faith and fair dealing is measured by <u>objective</u> evidence of unreasonable or arbitrary conduct. To illustrate that point here, if discovery were to reveal, as Plaintiff believes, that *millions* of documents meeting the "Official Guidance" were not designated as "opinions," this would be highly probative evidence that the Government breached its implied duties by failing to reasonably exercise its discretion in ensuring the proper designation of "opinions."

   2.  <u>Predominance Also is Satisfied With Respect to *Damages*</u>

The court also concluded that "individualized issues" predominated over common issues as to damages, on the basis that the Fee Schedule exempts charges for users who accrue a balance of less than $15 in any given quarter, and therefore

that a "review of each PACER user's account would be required to determine which potential class members in fact improperly paid for an opinion." This conclusion was erroneous, both factually and legally.

First, Plaintiff's certification papers demonstrated that the manual review referenced by the court would <u>not</u> be necessary, since in discovery the Government *already* segregated the exact number of PACER users who did not benefit from this quarterly "exemption" during the class period, i.e., users who received an invoice with an "amount due" – 387,959. Likewise, the Government even provided the exact number of *invoices* that did not fall within the quarterly exemption and so had an amount due, issued to these 387,959 PACER users – 2,401,754. Thus, there would be no need to conduct a manual "exemptions" review, contrary to the Order.

Second, even if this or another form of "manual" review of PACER billing records would be necessary, the court nonetheless erred in finding that such review would predominate over common issues, given the conceded number of common issues present, and well-settled law that "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *see also Pickett v. IBP, Inc.*, 2001 WL 34886460, at *9 (M.D. Ala. 2001) ("Individual questions of damages are rarely a barrier to certification.").

Indeed, the Government below both demonstrated and conceded its ability to match PACER billing records to mislabeled "opinions," and while that process would involve time and labor, that is not a reason to deny certification. *Supra* p. 17. Nor is denial justified because members' damages – namely refunds for PACER "opinions" charges – would entail "individualized" issues insofar as the *amount* of damages would vary depending on how many mislabeled "opinions" each paid to access, and the length of those opinions,[10] as such "calculations are ministerial and hardly intolerable." *Dear v. Q Club Hotel, LLC*, 2016 WL 7477734, at *5 (S.D. Fla. 2016) (quotations omitted) (members' damages required individual calculations depending on factors such as "type" of condo unit and "proportionate share" of maintenance costs); *see also Pettway v. Harmon Law Offices, P.C.*, 2005 WL 2365331, at *10 (D. Mass. 2005) ("While there are certainly differences in class members' individual claims to damages, the calculation of such damages, if warranted, is simply a question of mechanics.").[11]

---

[10] Per the Fee Schedule, PACER charges for access to "any case document" is $0.10 per page, not to exceed the fee for thirty pages," i.e., $3.00.

[11] Although not addressed in the Order, the Government in its sur-reply (meaning Plaintiff did not get to respond) argued that an "individual analysis" of members' billing records would be needed to determine what "portion" of invoices was "attributable" to mislabeled opinions. This was a convoluted way of saying that the damages to each member who paid for a mislabeled "opinion" would have to be calculated based on the length of each opinion. But, as the certification papers below showed, PACER billing records list the number of pages next to each transaction, and per the preceding footnote PACER charges $0.10 per page, not to exceed $3.00 for any given document. Thus, these "ministerial" calculations, *Dear*,

**C. The Court Erred in Ruling That the Superiority Element Was Not Met**

The court concluded that superiority under Rule 23(b)(3) was not met, based on the "underlying individualized inquiry required in order to identify opinions," which inquiry it ruled was governed by an "inherently subjective" standard. Per the above, however, the court erred in finding the Official Guidance "inherently subjective," or alternatively by refusing to narrow it or adopt another definition involving objective criteria. With a definition in place, the only "individualized inquiry" needed to identify mislabeled "opinions" would be a manual review of "orders" in CM/ECF, and again, while this may be laborious, it does not warrant denial, especially given the conceded numerous "common" issues present, and that realistically a class is the only method of relief for PACER users who paid for "opinions." The court thus erred in not finding superiority met. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (in finding superiority satisfied, court noted that "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be," and that "the large number of purported members in this suit and the similarity of their claims" and "the relatively small potential recovery in individual actions … and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution").

---

*supra*, do not justify a finding against predominance, and to the extent the court based its finding against predominance on this argument, it was in error.

## VI.   CONCLUSION

Plaintiff respectfully requests that the Court grant this petition for permissive appeal pursuant to Rule 23(f).

Dated: April 24, 2018

Respectfully submitted,

By:   /s/ Nicole W. Giuliano
Nicole W. Giuliano
**Giuliano Law, P.A.**
500 E. Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394
Tel: (954) 848-2940
nicole@giulianolaw.com

and

Morgan L. Weinstein
**Weinstein Law, P.A.**
5216 Van Buren Street
Hollywood, FL 33021
Tel: (954) 540-2755
morgan@mlwlegal.com

*Counsel for Petitioner/Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2018, the foregoing Petition was served by U.S. Mail, first-class postage pre-paid, and electronic mail on counsel of record identified on the Service List below

By:   /s/ Nicole W. Giuliano
Nicole W. Giuliano

**SERVICE LIST**

Alicia H. Welch
Email: Alicia.Welch@usdoj.gov
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
*Attorney for Respondent/Defendant The United States of America*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Petition complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding its exempted parts, the Petition contains 5,192 words. I further certify that the Petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Times New Roman Size 14.

By:  /s/ Nicole W. Giuliano
Nicole W. Giuliano

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Theodore D'Apuzzo, P.A., Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 16-62769-Civ-Scola |
| United States of America, | ) |
| Defendant. | ) |

## Order on Motion for Class Certification

This matter is before the Court on Plaintiff's motion for class certification (ECF No. 37). The Defendant United States of America opposes the Motion (ECF No. 40, 45). As explained more fully below, the Court concludes that individual issues of fact will predominate over common issues of fact, and the proposed class of plaintiffs is not ascertainable. As such, the Court **denies** the Plaintiff's motion for class certification (**ECF No. 37**).

### A. Background

Pursuant to the E-Government Act of 2002, the chief judge of each judicial district is tasked with establishing and maintaining a system providing for "[a]ccess to the substance of all written opinions issued by the court, regardless of whether such opinions are to be published in the official reporter . . . ." Pub. L. No. 107-347, § 205(a)(5). The Public Access to Court Electronic Records system ("PACER") is an electronic system that allows registered users to access judicial records online from federal appellate, district, and bankruptcy courts. In order to provide electronic public access to court records, the courts charge certain fees, which are set forth in the Electronic Public Access Fee Schedule. The Fee Schedule specifies that "[n]o fee is charged for access to judicial opinions."[1] (ECF No. 40-3 at 2.) The E-Government Act does not contain a definition of the term "opinion," however, the Administrative Office of the United States Courts ("AO") issued a memorandum in 2004, providing guidance with respect to definition of "written opinion." (*See* ECF No. 40-5, at 3.) The AO memorandum provides that "[f]or the purposes of the E-Government Act of 2002, . . . 'written opinion' is defined as, 'any document issued by a judge or judges of the court, sitting in that capacity, that sets forth a reasoned explanation for a court's decision." (*Id.*) The

---

[1] The Electronic Public Access Fee Schedule is available on the PACER website, www.pacer.gov.

**Exhibit A**

memorandum provides in addition that "[t]he responsibility for determining which documents meet this definition rests with the authoring judge, and the determination should be made at the time the document is filed." (*Id.*)

The Plaintiff contends that notwithstanding the E-Government Act's mandate, and the guidance provided with respect to what constitutes a "written opinion," PACER routinely improperly charges for court documents—including documents from courts in this district—that constitute judicial opinions. The Plaintiff purports to represent a class of PACER users who paid to access a document constituting a judicial opinion, which otherwise should have been free. In the complaint, the Plaintiff asserts three claims against the Defendant for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) illegal exaction. (*See* Complaint, ECF No. 14.) The Defendant filed a motion to dismiss (ECF No. 16), which the Court denied (ECF No. 28).

### B. Class Certification

The Plaintiff seeks to certify a nationwide class of PACER users, and the essential certification dispute is whether the class is ascertainable and administratively feasible, and whether the predominance and superiority requirements of Rule 23(b)(3) are satisfied. The Plaintiff contends that the official guidance and existing case management tools can be used to identify potential class members, and support a finding that common issues predominate and that the class action mechanism would be superior in this case. The Defendant argues that in addition to administrative limitations in identifying potential class members, the Plaintiff fails to identify objective criteria for determining whether potential class members accessed a written judicial opinion on PACER.

### 1. Legal Standard

Class actions are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Parties seeking to certify a class must "affirmatively demonstrate [ ] compliance with Rule 23." *Id.* Class certification analysis entails considering the factual and legal issues comprising the plaintiff's cause of action. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

The decision to certify a class action is governed by Federal Rule of Civil Procedure 23. The "putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). The party seeking certification must demonstrate: "(1) that the

class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Where certification is sought under Rule 23(b)(3), as it is here, the plaintiff must show, in addition to the four requirements of Rule 23(a), that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). The "burden of proof to establish the propriety of class certification rests with the advocate of the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). And the Court must conduct a "rigorous analysis" of the facts and law to determine whether the plaintiff has met his burden of demonstrating compliance with Rule 23. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citation omitted). While the district court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *See id.*

## 2. Analysis

The Defendant does not dispute that the Plaintiff satisfies the requirements of numerosity, commonality, typicality, or adequacy under Rule 23(a). Upon review, the Court determines that indeed these requirements are met in this case. However, the Court must also address the proposed class definition. *See Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 691 (S.D. Fla. 2010) (Dimitrouleas, J.) (citing cases). The Plaintiff proposes certification of a class comprising "all PACER users who, between November 22, 2010 and November 22, 2016, paid to access a document constituting a judicial opinion." (*See* Mot., ECF No. 37 at 1.) The Defendant maintains that determining class membership is not administratively feasible because the necessary database infrastructure or software capability to identify the relevant documents, and therefore class members, does not exist, and, in any event, identifying potential class members would require individual inquiries based upon the subjective definition of what

constitutes an opinion that should be accessible for free. The Plaintiff characterizes this case as involving the overarching issues of whether there is a breach of contractual duties owed to PACER customers, and whether the PACER charges for accessing judicial opinions constitute illegal exactions, and suggests that the Court may fashion a more appropriate class definition if it finds the proposed definition to be insufficient. Setting aside for the moment the technological concerns raised by the Defendant regarding identifying potential class members, the Court finds that regardless of potential class definition, this case is not suitable as a class action.

While the Plaintiff meets the Rule 23(a) requirements, the Plaintiff's certification argument deteriorates when the Court turns to Rule 23(b). After all the requirements of Rule 23(a) have been met, a court must still determine that both predominance and superiority are satisfied. *See* Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay*, 382 F.3d at 1255. The Court's predominance inquiry "is far more demanding than Rule 23(a)'s commonality requirement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). "Predominance is lacking and certification is inappropriate under Rule 23(b)(3) where the case does not lend itself to generalized proof tending to prove or disprove the elements of plaintiffs' claims." *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 637 (S.D. Fla. 2010) (Lenard, J.). Despite the Plaintiff's contentions, neither the predominance nor superiority requirements have been established in this case.

The flaw in the Plaintiff's proposed class definition—which also undermines predominance in this case—is that the official guidance with respect to the definition of "written opinion" is inherently subjective. Therefore, the Plaintiff's claims are not subject to determination with generalized proof. While the Plaintiff is correct that the E-Government Act mandates public access to the content of written opinions, and the PACER Fee Schedule represents that there is no fee for judicial opinions, the Act does not mandate free access to such opinions and is conspicuously silent regarding what constitutes a written opinion.[2] Furthermore, the guidance specifies that the responsibility of making that determination rests with the authoring judge. Even assuming that the over 1.1 billion PACER documents over 200 court databases nationwide are easily searchable, scrutiny of each order not already designated as a freely accessible opinion under the Fee Schedule would be

---

[2] Certainly, the E-Government Act could have included a definition for written opinions, or even a list of documents, that would make the intended documents objectively identifiable.

required to determine whether, in someone other than the authoring judge's view, the order fits within the definition provided by the official guidance. The issue of what orders constitute opinions subject to the E-Government Act and encompassed by the Fee Schedule is central not only to the Plaintiff's class definition, but also to the Plaintiff's causes of action, and would require individualized proof, precluding the ability to maintain this case as a class action.

Moreover, based upon the Fee Schedule, which specifies exemptions from application of the fee, review of each PACER user's account would be required to determine which potential class members in fact improperly paid for an opinion on PACER.[3] As a result, individualized issues would also predominate over common issues in the determination of damages.

For the same reasons, the superiority requirement is also not met in this case. "To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Jones*, 250 F.R.D. at 695 (citing Fed. R. Civ. P. 23(b)(3)). In his motion, the Plaintiff draws on *National Veterans Legal Services Program v. United States*, 235 F. Supp. 3d 32 (D.D.C. 2017) for support. In *National Veterans*, the plaintiffs claimed that the Fee Schedule charges excessive fees, i.e. fees higher than necessary to cover the cost of operating PACER, in violation of the E-Government Act. *Nat'l Veterans*, 235 F. Supp. 3d at 35. The district court certified a class of plaintiffs defined as "[a]ll individuals and entities who have paid fees for the use of PACER between April 21, 2010, and April 21, 2016, excluding class counsel in this case and federal government entities." *Id.* at 36. However, *National Veterans* is distinguishable from the case at bar because, as the court noted, the "plaintiffs' theory of liability is that the fee schedule itself violated the E-Government Act, not that the charges to individual plaintiffs violated the Act when they amounted to more than the cost of distribution to those particular plaintiffs." *Id.* at 44. In contrast, the Plaintiff here does not challenge the Fee Schedule itself; but rather, the application of the Fee Schedule to one specific category of documents, and the charges he contends were improperly incurred due to misidentification.

---

[3] According to the PACER Fee Schedule, "[n]o fee is owed for electronic access to court data or audio files via PACER until an account holder accrues charges of more than $15.00 in a quarter billing cycle." (ECF No. 40-3 at 3.)

Upon consideration, the Court finds that the difficulties in managing such a class action heavily weigh against class treatment in this case and far outweigh the remaining factors. Ultimately, the underlying individualized inquiry required in order to identify opinions in this case renders it inherently unmanageable as a class action.

**C. Conclusion**

Accordingly, the Plaintiff's motion for class certification (**ECF No. 37**) is **denied**.

**Done and ordered** at Miami, Florida, on April 12, 2018.

Robert N. Scola, Jr.
United States District Judge