UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-CV-62769-SCOLA/OTAZO-REYES

THEODORE D'APUZZO, P.A.,
Individually and on Behalf of All
Others Similarly Situated,

    Plaintiff,

        v.

THE UNITED STATES OF AMERICA,

    Defendant.
_____/

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DENYING CLASS CERTIFICATION

Plaintiff, Theodore D'Apuzzo, P.A. ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), respectfully moves for reconsideration of the Court's order (ECF No. 47) ("Order") denying Plaintiff's motion for class certification (ECF No. 37) ("Motion").

## INTRODUCTION

Plaintiff sought certification of a class consisting of PACER users who paid for documents constituting "opinions," in contravention of PACER's contractual terms of usage, which provide for *free* access to opinions.[1] On April 13, 2018, the Court issued the Order denying class certification. Given that the Order implicated novel legal issues, including how opinions should be defined for purposes of PACER's contractual terms, Plaintiff believed it was sensible to seek relief in the first instance in the Eleventh Circuit, via a Rule 23(f) permissive appeal petition. The Eleventh Circuit denied the petition on July 24, 2018; that denial, however,

---

[1] By not raising certain issues here Plaintiff is not waiving them for purposes of an eventual plenary appeal, *e.g.*, the Order's conclusion on page 4 that the E-Government Act of 2002 did not "mandate free access" to "opinions," but instead only mandated "public" access to them.

was not a decision on the merits, of course. And, pursuant to Rule 23(c)(1)(C), a district court may revisit a denial of class certification at any time prior to final judgment. *Id.*; *Shin v. Cobb County Bd. of Educ.*, 248 F.3d 1061, 1065 (11th Cir. 2001) (in denying Rule 23(f) petition, court stated, "We are mindful that the class certification order [denying certification] is no final order. The district judge may review his certification order at any time and may consider redefined or more narrowly tailored classes or subclasses….").

As such, Plaintiff now moves this Court for reconsideration of the denial, based on the need to correct clear error or prevent manifest injustice. The motion raises three primary grounds: 1) the Government's "opinions" definition is, or at least could have been made, sufficiently objective to support Plaintiff's proposed class; 2) even if that definition *is* "subjective," at a minimum a class relating to PACER charges for magistrate judges' reports and recommendations, and orders relating to same, should have been certified because those documents are "expressly" designated as "opinions" under the definition, eliminating any "subjective" element as to those documents; and 3) the Court's conclusion that predominance was not satisfied as to *damages* was based on a factually erroneous premise, and is contrary to clear precedent recognizing that "individual" damages issues do not preclude certification.

## ARGUMENT

### I. Standard of Review

The three primary grounds justifying reconsideration of a prior ruling are: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (11th Cir. 2010); *see also Vila v. Padron*, 2005 WL 6104075, at *1 (S.D. Fla. 2005) (reconsideration motions "appropriate where, for example, the Court has patently misunderstood a party, where there is an intervening change in controlling

law or the facts of a case, or where there is manifest injustice."). Here, reconsideration of the Order is warranted to correct clear error or prevent manifest injustice, on the following grounds.

**II.     The "Official Guidance" is Sufficiently Objective to Support a Class; Any "Subjective" Element Could Have Been Addressed by a Modified Definition**

The linchpin of the Court's ruling that the proposed class was not ascertainable, and that the predominance and superiority elements were not satisfied, was its conclusion that the Government's own "opinions" definition is "inherently subjective." *Order, p. 4*. That definition is part of the "Official Guidance" that the Administrative Office of the U.S. Courts – the agency that runs PACER – issued for federal courts' "compliance" with the E-Government Act of 2002's requirement that the substance of "all written opinions" issued by those courts after April 16, 2005 be accessible to the public. *Motion, Ex. 2, ECF No. 37-2*. This same Official Guidance also governs which documents are "opinions" for PACER's contractual terms of usage providing for *free* opinions access, for example, it is quoted in PACER "user manuals" and official PACER "newsletters." *Motion, p. 6.*

Although the Court concluded that the Official Guidance is "inherently subjective," the Official Guidance does contain objective guideposts. The first is that under it, any document containing a "reasoned explanation for [the] court's decision" is an "opinion." *Id. p. 5*. The second is that magistrate judges' "reports and recommendations … at such time as any action is taken by a district judge" on them, as well as "summary order[s]" relating to such reports and recommendations, are "expressly" designated to be "opinions" under the Official Guidance. *Id.* Finally, the Official Guidance excludes from its scope "routine, non-substantive orders," and goes on to provide examples of such orders, namely "scheduling orders or rulings on motions for extension of time." *Id.* These guideposts are sufficiently objective to support a definition of "opinions" for a class.

The first only requires that an order contain a "reasoned explanation." Even assuming arguendo that this term is in the abstract "subjective" or vague, it defies logic that certain types of orders would not, by their very nature, contain a "reasoned explanation." The Motion and Declaration filed in support thereof contained numerous examples of such orders, including ones on motions for summary judgment; motions to dismiss; motions for injunctive relief; and motions for class certification. *Motion, p. 7; Declaration, ECF No. 44-1*. And, as discussed below on page 7, the Order acknowledged that a "list of documents" qualifying as "opinions" would furnish an "objectively identifiable" basis for a class.

Accordingly, a class limited to these and other types of rulings as identified in briefing submitted by the parties, and ultimately approved by the Court, should have been granted under the Court's broad authority with respect to class definitions. *E.g.*, *Mohamed v. American Motor Co.*, LLC, 320 F.R.D. 301, 310 (S.D. Fla. 20 17) ("District Courts are permitted to limit of modify class definitions to provide the necessary precision.") (quotations omitted); *Herman v. Seaworld Parks & Entm't, Inc.*, 320 F.R.D. 271, 285 (M.D. Fla. 2017) ("To the extent that the class definitions should be refined to more clearly cover the class of individuals affected by Sea World's alleged conduct, the Court has discretion to redefine the class to provide the necessary precision."). Likewise, under this same authority, to the extent the Court considered the term "reasoned explanation" to be vague, it could have issued a ruling clarifying it by reference to <u>objective</u> criteria, such as case law. *Reply in Support of Class Certification, ECF No. 41, p. 5.*[2]

---

[2] That not every mislabeled "opinion" might be identified with these proposed methods is no reason to deny certification. *E.g.*, *Kendrick v. Std. Fire Ins. Co.,* 2010 WL 11488487, at *10 (E.D. Ky. 2010) ("Defendants would have the Court reject any process, and consequently certification, that fails to identify potential class members with 100% accuracy, or is otherwise suggesting to the Court that a class should not be certified unless 100% accuracy of its composition can be achieved. This is not the standard."); *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) (rejecting ascertainability challenge based on argument that

The next objective guidepost, which states that magistrate judges' reports and recommendations, and orders relating to same, are "expressly intended" to be "opinions" under the Official Guidance, speaks for itself. Put simply, these documents are <u>automatically</u> "opinions" regardless of their content, i.e., there is no "subjective" consideration applicable to them. As discussed in section III *infra*, at a minimum, then, a class limited to these documents should have been certified.

The third and final objective guidepost excludes from "opinions" orders that are "routine" and "non-substantive." Both of those terms are sufficiently clear, but the Official Guidance went a step further and provided the examples of "scheduling orders" and rulings on "motions for extension of time." This guidepost, especially when read together with the first one relating to "reasoned explanations," is sufficient to support a class – it reiterates that orders that are not "routine" or "non-substantive" should be designated as "opinions." And, again, it is self-evident that certain types of orders are by their nature "substantive," such as ones on summary judgment or class certification, and thus distinguishable from "routine" and "non-substantive" ones such as rulings on motions for extension of time and scheduling orders. As with orders containing a "reasoned explanation," the Court could order the parties to submit briefing as to which types of orders would be excluded from the class definition as being "routine" and "non-substantive."[3]

Plaintiff acknowledges, of course, that the Court in the Order declined to fashion a modified "opinions" definition that would have addressed the above concerns. Plaintiff's basis for reconsideration, however, is that the Order did not address – and, more significantly, is

---

proposed class might not encompass every member; "[T]he mere fact that a class action will not resolve every conceivable issue touching upon a challenged policy or practice does not require a court to throw out the baby with the bath water.").

[3] As observed in the Reply, Plaintiff had already made numerous such "exclusionary" suggestions. *Id. p. 7 n. 7.*

5

inconsistent with – the Court's order (ECF No. 28) denying the Government's motion to dismiss, in which the Court ruled that Plaintiff properly alleged that the Government had a *contractual obligation* to promulgate a definition or otherwise "implement safeguards to ensure free access to judicial opinions via PACER, so as to not deprive PACER users of this contractual benefit." *Id. p. 7.* That same ruling described Plaintiff's contractual claim as "focus[ing] on the Government's *failure to adequately exercise the discretion afforded it* under the PACER contract to insure proper designation of judicial opinions as such." *Id.* (emphasis added).

The Government in opposing class certification all but conceded that it breached these contractual obligations when it claimed that the Official Guidance – its *own* "opinions" definition – was too "subjective" to support a class, even going so far as claiming that "fundamentally, it is unclear what constitutes an opinion" under that Official Guidance. *Response to Motion for Class Certification, ECF No. 40, p. 2*. The Court apparently agreed with these arguments, but simply because the Government had "discretion" in defining "opinions" does not mean it could do so without restraint. This is because, as the Court recognized in denying the motion to dismiss, a party imbued with discretion in the exercise of contractual obligations must do so in a *reasonable* manner, as measured by an *objective* standard and evidence. *Order Denying Motion to Dismiss, ECF No. 28, p. 6; Motion, pp. 11, 13-14.*[4]

---

[4] Because *objective* evidence applies to claims of this sort, courts routinely hold that such claims can be adjudicated on a class-wide basis, as briefed in the Motion. *E.g., id. p. 4* (citing to *In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 670 (S.D. Fla. 2015) (in certifying multi-state class action claims for breach of implied covenant of good faith and fair dealing, court stated that "breach of the covenant good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct").

As such, Plaintiff requests the Court to reconsider its conclusion that "Plaintiff's claims are not subject to determination with generalized proof." *Order, p. 4.* Here "generalized proof" does exist, for instance, a high number of mislabeled "opinions" – including magistrate judges' reports and recommendations, and related orders, which automatically are "opinions" under the

Stated another way, if the Official Guidance is so "subjective" or otherwise deficient that identifying "opinions" under it is "fundamentally" not possible, as the Government argues, to prevent injustice the Court should have fashioned a modified definition for purposes of the class, instead of allowing the Government to use those supposed deficiencies – which amount to a breach of its contractual obligations – as a shield against a class. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012) (stating that "[i]t is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management," and "[t]o allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies"); *see also Practice Mgt. Support Services, Inc. v. Cirque du Soleil, Inc.*, 301 F.Supp.3d 840, 859 (N.D. Ill. 2018) (defendants "cannot avoid a class suit merely because their own actions have made the class more difficult to identify").

In fact, the Order acknowledged that "[c]ertainly, the E-Government Act could have included a definition for written opinions, or even a list of documents, that **would make the intended documents objectively identifiable**." *Order, p. 4 n. 2* (emphasis added). Although this statement related to the E-Government Act, it recognizes the possibility of defining "opinions" in a manner sufficiently objective to support a class. This, combined with the Court's ruling that Plaintiff properly alleged that the Government was contractually obligated to define "opinions" in a reasonably objective manner, warrants the fashioning of a modified definition. *See Mohamed*; *Herman, supra; see also A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 696 (S.D. Fla. 2017) (class definitional problems "can and often should be solved by refining the class definition rather than by flatly denying class certification").

---

Official Guidance as discussed in section III *infra* – would be probative of whether the Government failed in its contractual obligations to guard against same.

With either a "list" of documents qualifying as "opinions" (e.g., summary judgment rulings) or a definition of "opinions" based on objective criteria (e.g., case law) in hand, identifying mislabeled "opinions" would be possible using the existing CM/ECF websites. *Reply, pp. 4-5*. Simply because that process would require a manual review of documents, and thus may be laborsome, is no reason to deny certification. *Kendrick v. Std. Fire Ins. Co.,* 2010 WL 11488487, at *8 (E.D. Ky. 2010) (rejecting ascertainability challenge and stating that "time and labor alone, even where significant, is not a reason to forego proceeding via a class").

On this point, recently the Eleventh Circuit noted that the need for a "file-by-file, plaintiff-by-plaintiff" review to identify members does not necessarily preclude certification – even under the "highest standard" of administrative feasibility – so long as that review does not equate to "individualized mini-trials." *Ocwen Loan Servicing, LLC v. Belcher*, 2018 WL 3198552, at *4, 7 (11th Cir. June 29, 2018). Here, too, with either a "list" or "definition" in place, identifying mislabeled "opinions" would not involve "mini-trials," but instead a mere glance at CM/ECF orders, and this is sufficient for ascertainability. *See Owens v. Met. Life Ins. Co.*, 2017 WL 6302384, at *5 (N.D. Ga. 2017) (class ascertainable although "individual records will have to be examined in order to determine class membership" where review involved would be "ministerial") (quotations omitted); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 171 (3d Cir. 2015) ("[T]he size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification. To hold otherwise would seriously undermine the purpose of a Rule 23(b)(3) class….") (quotations and citations omitted).[5]

---

[5] The *Ocwen* panel recognized a split among the circuit courts as to whether a plaintiff "must demonstrate an 'administratively feasible' method for determining class membership over and above Rule 23's express requirements," and that "our circuit has yet to address this split in a published opinion." 2018 WL 3198552, at *3. This Court applied the "administratively feasible"

Finally, for the same reasons discussed above, Plaintiff requests the Court to reconsider its ruling that the superiority element of Rule 23 is not met. The need for a manual review of records and the labor associated with that effort is outweighed by several other factors supporting superiority, such as the numerous *conceded* "common" issues present here, the large number of potential class members (almost 400,000 PACER users), the similarity of their claims, the relatively small potential recovery in individual actions, and resulting reduced likelihood that plaintiffs will bring suit for such recoveries. *See Palm Beach Golf Center-Boca, Inc. v. Sarris,* 311 F .R.D. 688, 699 (S.D. Fla. 2015) (applying these factors in finding superiority satisfied).

### III. At a Minimum, a Class Relating to PACER Charges for Magistrate Judges' Reports and Recommendations, and Orders Relating Thereto, Should Have Been Certified

Even if the Court wholly rejects reconsideration of its ruling that the Official Guidance is too "inherently subjective" to support a class, it still should certify a class relating to PACER charges for magistrate judges' reports and recommendations, and related orders (i.e., orders adopting or rejecting them), in light of the following language from the Official Guidance: "The definition is **expressly intended to cover** reports and recommendations issued by magistrate judges at such time as any action is taken by a district judge on a report and recommendations

---

standard in denying certification. *Order, p. 2* (stating that the "essential certification dispute is whether the class is ascertainable and administratively feasible").

Given the possibility that the Eleventh Circuit will recede from its unpublished opinions applying this standard, and that those opinions are not binding precedent in any event, *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016) ("In this Court, unpublished decisions, with or without opinion, are not precedential and they bind no one. See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent . . . ."),  Plaintiff asks the Court to reconsider applying the "administratively feasible" standard, and to instead rule consistently with the numerous other courts who have rejected it as contrary to Rule 23. *E.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017) ("A separate administrative feasibility prerequisite to class certification is not compatible with the language of Rule 23….We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement."). As noted, however, even under this standard the need for a "manual" review of documents does not preclude certification.

issued by a magistrate judge, and also includes a summary order adopting such report and recommendations." *Motion, p. 5* (emphasis added).[6]

Plainly put, under this language magistrate judges' reports and recommendations and related orders *ipso facto* are "opinions" for purposes of PACER charges; there simply is no "subjective" or "discretionary" element applicable to these documents. As such, the bases for class denial in the Order, namely that the proposed class was not ascertainable and did not meet the predominance and superiority elements due to the "inherent subjectivity" of the Official Guidance, do not apply to them. And, such a class clearly would be "ascertainable," since identification of them would only involve a cursory review of CM/ECF orders. Indeed, as noted the Order acknowledged that "[c]ertainly, the E-Government Act could have included a definition for written opinions, or even a **list of documents**, that would make the intended documents objectively identifiable." *Id. p. 4, n. 2* (emphasis added). The Official Guidance's explicit directive that reports and recommendations and related orders are "opinions" is the functional equivalent of a "list of documents" that the Court stated would make identification "objectively identifiable." Finally, merely because identifying reports and recommendations and related orders would involve a "manual" review and thus time and labor does not justify class denial. *Supra pp. 8-9*.

**IV.   The Court's Ruling That Predominance With Respect to Damages Was Not Met Was Based on an Erroneous Factual Premise, and is Contrary to Clear Precedent**

The Government raised two principal arguments against predominance as to damages. The first was that a "manual" review of PACER user accounts was needed to exclude those users who "had a fee exemption or waiver in the billing cycle in which the orders were accessed." *Sur-Reply in Opposition to Class Certification, ECF No. 45, p. 4*. This "exemption" refers to

---

[6] This argument was raised in the certification briefing, *e.g., Motion p. 8, Reply p. p.3*, but was not addressed in the Order.

PACER's policy of waiving charges of less than $15 incurred in any one quarterly billable period. *Order, p. 5, n. 3*. The second was that an "individual analysis" of putative class member's PACER records found to have paid for a mislabeled "opinion" would be necessary to determine the "portion of the invoiced amount attributable" to each such document. *Sur-Reply, p. 5*.

The Order addressed only the first argument, which it adopted by stating that "based upon the Fee Schedule, which specifies exemptions from application of the fee, review of each PACER user's account would be required to determine which potential class members in fact improperly paid for an opinion on PACER." *Id. p. 5*. That argument, however, rested on an erroneous factual premise that by extension applies to the Order, namely that the referenced "review" is necessary. It is not, because the Government in discovery already segregated the exact number of PACER users who did not benefit from any quarterly "exemption" during the class period, i.e., users who received an invoice with an "amount due" – 387,959. *Reply, p. 9*. The Government also provided the exact number of *invoices* that did not fall within the quarterly exemption and so had an amount due, issued to these 387,959 PACER users – 2,401,754. *Id.*

Contrary to the Order, then, it would not be necessary to review every PACER user account to account for "exemptions" – the 387,959 figure is comprised of PACER users who received at least one invoice with an amount due, notwithstanding the exemptions. Likewise, the potentially relevant PACER billable records that would need to be searched for charges relating to mislabeled "opinions" would be limited to the records tied to the 2,401,754 invoices. And, the Government has proven its ability to match PACER billable records to documents constituting "opinions" – in particular, during discovery the Government identified the PACER users who were charged to access numerous mislabeled "opinions" that Plaintiff had attached as exhibits to

11

the Amended Complaint (ECF No. 14). *Reply, p. 8.*[7] The Government performed this same analysis with respect to Plaintiff's PACER account – Plaintiff was issued two non-exempt quarterly invoices, i.e., invoices with an "amount due," and the Government produced PACER billable records for those two quarters, each showing a charge for a document constituting an "opinion." *Id. p. 9.* Moreover, to the extent the Government urged denial of the class based on the need for a "manual" review of records, or the amount of "time" or "labor" that would be involved in identifying charges for mislabeled "opinions" in PACER records, neither is a justification for denial. *Supra pp. 8-9.*

Although not addressed in the Order, the Government's second argument, too, does not justify class denial. Indeed, that argument is merely a convoluted way of saying that damages to each member who paid for a mislabeled "opinion" would vary depending on two factors: 1) the number of mislabeled "opinions" paid for, and 2) the length of those opinions. This is a garden-variety type of damages analysis commonly found in certified classes. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1259–60 (11th Cir. 2004) ("Particularly where damages can be computed according to some formula, statistical analysis, or other **easy or essentially mechanical methods**, the fact that damages must be calculated on an individual basis is no impediment to class certification.") (emphasis added; internal citations omitted); *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.")

The first of these factors would automatically be satisfied as part of the identification process described two paragraphs above, as the number of mislabeled "opinions" for each user

---

[7] Mid-litigation the Government *changed* the "opinions" designation of these exhibits, meaning it agreed with Plaintiff's allegations in the Amended Complaint that those documents were "opinions" under the Official Guidance, but yet had not been designated as such in PACER, thus requiring users to pay for their access. *Reply, p. 2 and p. 8 n. 9.*

would be revealed through that process. The second would involve a simple arithmetical calculation, namely multiplying the number of pages in each mislabeled "opinion" – which number appears next to each transaction in the PACER billable records, *e.g., Reply, Comp. Ex. 4, ECF 41-4, p. 3* (highlighted entries showing "3" and "5" next to 3-page and 5-page "opinions," respectively, for which Plaintiff to access) – by $0.10, the amount PACER charges for each page per document accessed (not to exceed $3.00 per document). *Motion p. 17 n. 45*. These calculations are "ministerial and hardly intolerable." *Dear v. Q Club Hotel, LLC*, 2016 WL 7477734, at *5 (S.D. Fla. 2016) (quotations omitted) (members' damages required individual calculations depending on factors such as "type" of condo unit and "proportionate share" of maintenance costs); *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 594–95 (S.D. Cal. 2010) ("Although calculating damages would involve individual inquiry into the wages of each class member, this would likely involve only simple arithmetic and would not be a reason to deny class certification."). And, again, merely because performing the ministerial damages calculations would involve a "manual" review of records or require time and labor is not a justification for class denial. *Supra pp. 8-9.*

## CONCLUSION

Plaintiff respectfully requests that the Court reconsider its denial of the proposed class, and that it certify the proposed Class, appoint Plaintiff as Class representative, and appoint Plaintiff's attorneys as Class counsel.

Dated: August 6, 2018

By: */s/ Nicole W. Giuliano*
Nicole W. Giuliano
Florida Bar No. 71067
**Giuliano Law, P.A.**
500 E. Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394
Tel: 954-848-2940
nicole@giulianolaw.com

>John Anthony Van Ness
>Florida Bar No. 391832
>**Van Ness Law Firm, PLC**
>1239 East Newport Center Dr., Suite 110
>Deerfield Beach, FL 33442
>Tel: 954-571-2031
>tvanness@vanlawfl.com
>
>Morgan L. Weinstein
>Florida Bar No. 87796
>**Weinstein Law, P.A.**
>66 West Flagler Street, 11th Floor
>Miami, Florida 33130
>Tel: 954-540-2755
>morgan@mlwlegal.com
>
>*Attorneys for Plaintiff*

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that the undersigned conferred with Defendant's counsel in a good faith effort to resolve the issues raised herein, and that Defendant does not consent to the relief requested.

>By: */s/ Nicole W. Giuliano*
>Nicole W. Giuliano

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically through CM/ECF on August 6, 2018, on all counsel or parties of record on the Service List below.

>By: */s/ Nicole W. Giuliano*
>Nicole W. Giuliano

## SERVICE LIST

Alicia H. Welch
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Alicia.Welch@usdoj.gov
*Attorney for Defendant The United States of America*