United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Theodore D'Apuzzo, P.A., ) | |
| Individually and on Behalf of All ) | |
| Others Similarly Situated, ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 16-62769-Civ-Scola |
| v. ) | |
| ) | |
| United States of America, ) | |
| Defendant. ) | |

### Order on Motions for Summary Judgment

Plaintiff Theodore D'Apuzzo, P.A. ("D'Apuzzo") claims the United States Government wrongfully charged him to access two documents (the "Documents") on the Public Access to Court Electronic Records ("PACER") system. The issue central to his grievance is the meaning of the term judicial "opinion." PACER users receive "opinions" for free. But the Documents were not designated "opinions" on PACER. D'Apuzzo believes this was wrong. In his view, the Documents were in fact "opinions" and he should not have been charged to access them. This lawsuit is D'Apuzzo's attempt to recover the 80 cents in PACER fees he incurred as a result.[1]

The parties now cross-move for summary judgment on the three claims asserted by D'Apuzzo. (the "Motions," ECF Nos. 67, 70.) The Court held a hearing on the Motions on June 26, 2019. Having considered the parties' written submissions, the entire record in this case, the parties' arguments and presentations at the hearing, and the applicable law, the Court **grants in part and denies in part** the Government's motion (**ECF No. 67**) and **grants in part and denies in part** D'Apuzzo's motion (**ECF No. 70**) as follows.

### 1. Background

The material facts in this case are not in dispute. In fact, aside from a single objection to the Government's legal interpretation of the E-Government Act, D'Apuzzo agrees with every fact proffered by the Government to support its entitlement to judgment as a matter of law. (*See* ECF Nos. 66, 82.) At the hearing,

---

[1] D'Apuzzo also sought to proceed on behalf of a class of similarly situated PACER users. The Court declined to certify that class. (ECF No. 47.)

D'Apuzzo's counsel reiterated that there are no material facts in dispute. A summary of those stipulated facts, as well as those proffered by D'Apuzzo, follows.

### A. The Undisputed Material Facts

The PACER system is a set of software programs, developed and maintained by the Administrative Office of the United States Courts, that allow the public to access court filings and case information residing on court electronic databases. (ECF Nos. 66, 82 at ¶¶ 1; ECF Nos. 69, 77 at ¶¶ 5.) To access this system, prospective PACER users must register for an account. (ECF Nos. 69, 77 at ¶¶ 4.) The registration process is a series of webpages that provide information about the PACER system and request information from registrants. (ECF Nos. 66, 82 at ¶¶ 10-13.)

The first two pages request "account information" and "user information" from registrants, including names, addresses, usernames and passwords. (*Id.* at ¶¶ 10; ECF No. 64-1 at pp. 2-22.)

The third page, titled "Payment Information," informs PACER registrants that:

> All registered users will be charged as follows:
>
> - Use of PACER systems will generate a $.10 per-page charge and is capped at $3.00 for single documents and case-specific reports that are more than 30 pages
>
>     . . . .
>
> - Judicial opinions accessed via PACER will not generate a charge.
> - If your usage does not exceed $15 in a quarter, fees are waived.

(ECF No. 64-1 at p. 25.) That page allows, but does not require, registrants to input their credit card information. (*Id.*)

On the fourth and final page, registrants are required to review PACER's policies and procedures (the "Policies and Procedures"). The Policies and Procedures are provided in full on that page by scrollable box and by hyperlink. (*Id.* at pp. 27-30; ECF Nos. 66, 82 at ¶¶ 12.) Registrants are again informed by the Policies and Procedures that the "[u]se of the PACER system will generate a $.10 per page charge," and that "[b]y registering for a PACER account" users "assume responsibility for all fees incurred through the usage of this account." (ECF No. 64-1 at p. 30.) The term "opinion" is not mentioned in the Policies and Procedures. (*Id.*) Registrants must click a box on that page "acknowledg[ing]" that they "read and understand" the Policies and Procedures, at which point an

account is created and the registrant may access PACER services. (*Id.* at p. 27; ECF Nos. 66, 82 at ¶¶ 15.)

In August 2014, D'Apuzzo registered for a PACER account. (ECF No. 65-1 at 29:20-30:11.) Although he does not "really recall" the registration process, D'Apuzzo does not dispute that the process remains the same today as it was in August 2014. (*Id.* at 30:14; ECF No. 64-1 at p. 2; ECF Nos. 66, 82 at ¶¶ 9.)

On August 23, 2016, D'Apuzzo accessed an "Order Denying Defendants' Request for Judicial Notice" entered by District Judge James Cohn in *Georgian v. Zodiac Group, Inc.*, No. 10-cv-60037, 2011 WL 3349573, at *1 (S.D. Fla. Aug. 3, 2011) (the "Cohn Order," ECF No. 14-1). (ECF Nos. 66, 82 at ¶¶ 30; ECF No. 64-1 at p. 48.) The Cohn Order was not docketed as an opinion and cost 30 cents to access, a fact made known to D'Apuzzo by a transaction receipt reviewed by him prior to downloading that order. (ECF Nos. 66, 82 at ¶¶ 22, 25-26.) On October 5, 2016, D'Apuzzo received an invoice for $66.60 for the billing quarter in which he accessed the Cohn Order. (*Id.* at ¶¶ 31; ECF No. 64-1 at p. 50.) D'Apuzzo paid that invoice on November 3, 2016. (ECF Nos. 66, 82 at ¶¶ 32; ECF No. 64-1 at p. 51.)

That same day, D'Apuzzo accessed an order on a preliminary injunction issued by District Judge Richard Jones in *Organo Gold International, Inc. v. Ventura*, No. 2:16-cv-00487, 2016 WL 1756636, at *1 (W.D. Wash. May 3, 2016) (the "Jones Order," ECF No. 14-2). (ECF Nos. 66, 82 at ¶¶ 32.) The Jones Order was not docketed as an opinion and was five pages long. (*Id.* at ¶¶ 23.) Prior to downloading the Jones Order, D'Apuzzo reviewed a transaction receipt memorializing that the cost of the order was 50 cents. (*Id.* at ¶¶ 26.) D'Apuzzo downloaded the order on November 3, 2016. (*Id.* at ¶¶ 32.) He incurred $18.50 in PACER fees for that billing quarter, which he paid on March 29, 2017. (*Id.* at ¶¶ 36; ECF No. 64-1 at pp. 53-54.)

### B. Procedural History

D'Apuzzo filed this lawsuit on November 22, 2016. (ECF No. 1.) The operative amended complaint (ECF No. 14) asserts three counts: Count I for breach of contract, claiming that the Government breached a contract with D'Apuzzo by charging him a fee to access the Documents, which he claims should have been designated free judicial "opinions" but were not, (ECF No. 14 at ¶¶ 55-61); Count II for breach of the covenant of good faith and fair dealing, claiming that the Government "breached the implied covenant of good faith and fair dealing in the performance of these PACER contracts by charging users to access judicial opinions," and not promulgating sufficient guidance on which orders constitute "opinions," (*id.* at ¶¶ 62-70); and Count III for illegal exaction, claiming that the Government "illegal[ly] exacte[d]" 80 cents in PACER fees from

D'Apuzzo, which he argues was "unnecessary," "unreasonable" and "in excess of that authorized by the E-Government Act and the Fee Schedule," (*id.* at ¶¶ 71-79).

The Government moved to dismiss. (ECF No. 16.) The Court denied that motion. (ECF No. 28.) D'Apuzzo then moved for class certification. (ECF No. 37.) The Court denied that motion, too. (ECF No. 47.) At that point, D'Apuzzo petitioned the Eleventh Circuit for leave to take a permissive appeal of the order denying class certification. (ECF No. 48-1.) He further requested and received a stay of this district court proceeding pending the appellate court's decision. (ECF Nos. 48, 49.) The Eleventh Circuit denied the petition on July 24, 2018, and the Court reopened this case on July 31, 2018. (ECF Nos. 50, 51.) Seven days later, and after failing to obtain interlocutory appellate review, D'Apuzzo reasserted his class certification motion before this Court by way of a motion to reconsider "to correct clear error or prevent manifest injustice." (ECF No. 52.) Thereafter, the parties filed the present motions for summary judgment. (ECF Nos. 67, 70.)

### i. **The Government's Motion**

The Government seeks summary judgment on all claims based on waiver and administrative exhaustion theories. As that argument goes, D'Apuzzo waived his right to challenge the charges at issue because he knew the Documents were not designated "opinions" but paid for them anyways. For its exhaustion argument, the Government claims that D'Apuzzo was required to contest any billing errors through an administrative appeal process prior to filing suit, which he did not do. (ECF No. 67 at pp. 11-15, 18, 20; ECF No. 32 at p. 12.)

Specific to Count I, the breach of contract claim, the Government requests summary judgment in its favor arguing that (1) no valid contract exists because the term "opinion" is inherently subjective and thus insufficiently definite, (ECF No. 67 at pp. 5-8); (2) no valid contract exists because D'Apuzzo gave no consideration for the "opinions" he claims to be entitled to for free, (*id.* at pp. 9-10); and (3) even if a valid contract exists, Count I still fails because the Government did not breach that contract by charging D'Apuzzo to access the Documents, (*id.* at pp. 10-11).

On Count II, for breach of the implied covenant of good faith and fair dealing, the Government claims entitlement to summary judgment on three grounds: (1) that no valid contract exists between D'Apuzzo and the Government, (*id.* at pp. 15-16); (2) that the Government did not breach an implied covenant of good faith and fair dealing by not adopting a different definition of "opinion" from that which D'Apuzzo agreed to, (*id.* at p. 16); and, relatedly, (3) that no breach occurs when a judge exercises his or her discretion to label, or not label, an order as an "opinion," (*id.* at pp. 17-18).

Finally, the Government requests summary judgment on Count III for illegal exaction, arguing (1) that the Court lacks jurisdiction to consider the claim because no statute gives PACER users an express or implied damages remedy for improper PACER charges, (*id.* at pp. 18-19); (2) that the claim fails because the PACER charges at issue were not improper or illegal, (*id.* at p. 20); and (3) that D'Apuzzo failed to comply with the administrative process for contesting PACER billing errors.

### ii.     D'Apuzzo's Motion

D'Apuzzo requests partial summary judgment on four issues: (1) that a contract, either express or implied-in-fact, exists between the Government and D'Apuzzo related to his PACER usage, as is necessary to support Counts I and II, (ECF No. 70 at pp. 2-6); (2) that the E-Government Act of 2002 "mandated that federal courts provide the public with *free* access to their opinions," as relevant to Count III for the illegal exaction, (*id.* at pp. 1, 6-9 (emphasis in original)); (3) that "the Government breached its contractual duty of good faith and fair dealing, and the E-Government Act's mandate, by failing to implement a suitable opinions definition, thereby rendering it liable under Counts II and III," (*id.* at pp. 1, 9-15); and (4) that "the Government's affirmative defenses of exhaustion of administrative remedies and waiver fail as a matter of law," (*id.* at pp. 1, 15-21).

## 2.    Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine

issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable fact finder could find for the nonmoving party. *Id.*

When a case is set for bench trial, like this case is, "a district court may draw inferences against the non-moving party at the summary judgment stage in certain limited circumstances." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ. Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). To that end, in the Eleventh Circuit[2]:

> where 'there are no issues of witness credibility' the district court may conclude 'on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact' and grant summary judgment, 'even though its decision may depend on inferences to be drawn from what has been incontrovertibly proved.' When 'there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony,' a 'trial on the merits would reveal no additional data,' and 'hearing and viewing the witnesses subject to cross-examination would not aid the district court's determination.' Therefore, the district judge, 'as trier of fact, is in a position to and ought to draw his inference without resort to the expense of a trial.'

*Id.* (citations and alterations omitted; quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978)).

Moreover, there are "limited circumstances wherein the district court may treat cross-motions for summary judgment as a trial and resolve the case on the merits." *Id.* (quoting *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1345-46 (11th Cir. 2015)). Relevant considerations in assessing if such circumstances exist are "whether the district court held 'a hearing on the motions for summary judgment in which the facts were fully developed'[3]; whether the parties 'expressly stipulated to an agreed set of facts'[4]; and whether the record reflects that the parties had in 'effect submitted the case to the court for trial on an agreed statement of facts embodied in a limited written record,

---

[2]   *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1356 (Fed. Cir. 2014) ("We review the grant of summary judgment under the law of the regional circuit.").

[3]   *See* ECF No. 98.

[4]   *Compare* ECF No. 66 *with* ECF No. 82.

which would have enabled the district court to decide all issues and resolve all factual disputes.[5]'" *Id.* at 1252-53.

3. Discussion

    A. **An Express Contract Exists, But the Government Did Not Breach It**

In Count I, D'Apuzzo argues that he had a contract with the Government entitling him to access judicial "opinions" for free, and that the Government breached this contract when it charged him to access the Documents, which he claims were wrongly not labeled "opinions."

"To recover for breach of contract, a party must allege and establish (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Draining Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

The parties cross-move for summary judgment on Count I, raising arguments under the first and third elements. The Court agrees with D'Apuzzo that a valid contract was formed between the parties. But the Court also finds that the Government did not breach the terms of that contract. Summary judgment is therefore entered for the Government on Count I.

    i. *The Parties Formed an Express Contract*

D'Apuzzo claims an express contract was formed through the PACER account registration process and his acceptance of the Policies and Procedures. (ECF No. 70 at pp. 3-4 (identifying his contract as "the contract that all PACER users enter into with the Government when they sign up [i.e. register] for PACER accounts" (quoting this Court's prior order on the Government's motion to dismiss)).) The Government disagrees, arguing that the term "opinion" is insufficiently definite to give rise to contractual obligations and, further, that any such contract fails for lack of consideration. (ECF No. 67 at pp. 5-11; ECF No. 78 at pp. 2-6.)

Under federal contract law, which governs this case,[6] an express contract with the United States exists where there is "a mutual intent to contract

---

[5] *See* Parties' Joint Motion for Modification of Scheduling Order and Continuance of Trial Date, ECF No. 93 ("Both Parties believe that a trial is unnecessary to resolve Plaintiff's claims, given that the material facts are undisputed, and indeed both have moved for summary judgment.").

[6] "[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500,

including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." *Total Med. Mgmt., Inc. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997); *Hoag v. United States*, 99 Fed. Cl. 246, 253 (2011).

Completion of the PACER registration process created an express contract between the Government and D'Apuzzo. Through the registration process, the Government offered D'Apuzzo "[j]udicial opinions accessed via PACER" for free and other court documents for 10 cents per page. (ECF No. 64-1 at p. 25.) D'Apuzzo was presented these terms during the registration process and could not have registered for PACER or used that service without "acknowledg[ing]" that he "read and underst[ood]" the Policies and Procedures. (*Id.* at p. 30.) The Government thus offered D'Apuzzo access to the PACER system on condition that he pay 10 cents per page for court documents, except for "[j]udicial opinions accessed via PACER" which would be provided for free. (ECF No. 64-1 at p. 27; ECF Nos. 66, 82 at ¶¶ 15.) D'Apuzzo accepted this offer by completing the registration process and creating a PACER account.

The contract terms are sufficiently definite. "The requirement for certainty in contracts serves two purposes. One is the need to determine whether the parties in fact intended to contract at all, and the other relates to the ability of a court to determine when a breach has occurred and to formulate an appropriate remedy." *Aviation Contractor Emps., Inc. v. United States*, 945 F.2d 1568, 1572 (Fed. Cir. 1991) (citing Restatement (Second) Contracts § 33 (1981)). There is a clear, mutual intent of the parties to create an express contract through which D'Apuzzo receives "[j]udicial opinions accessed via PACER" for free, but otherwise pays the Government 10 cents per page to access PACER documents subject to certain limitations irrelevant here.[7]

---

504 (1988). Subject to exceptions inapplicable here, the Federal Circuit Court of Appeals has "exclusive jurisdiction" of "an appeal from a final decision of a district court" when federal jurisdiction is based 28 U.S.C. § 1346(a)(2), as it is in this case. 28 U.S.C. § 1295(a)(2); (ECF No. 14 at ¶ 12.) Because of this, the federal contract law governing this case "for the most part has been developed by the Court of Appeals for the Federal Circuit and the Court of Claims." *Seaboard Lumber Co. v. United States*, 15 Cl. Ct. 366, 369 (1988).

[7] Although an "expressed contract 'speaks for itself and leaves no room for implications,'" *Webster Univ. v. United States*, 20 Cl. Ct. 429, 432-33 (1990), the Court notes that the parties' subsequent performance also evidences a mutual intent to be bound by these terms. For example, with respect to the transactions challenged in this suit, the Government charged D'Apuzzo 10 cents per page to access the Documents, which were not designated "opinions" on PACER, and D'Apuzzo accepted and paid those charges. (ECF Nos. 66, 82 at ¶¶ 26, 31, 36.)

Because the parties intended to contract, the Court is hesitant "to deny enforcement on the basis of indefiniteness." *Id.* (citing 1 A. Corbin, *Corbin on Contracts* § 97 (1963)). And the Court finds that the contract term "judicial opinion" is sufficiently definite. Here, the Government agreed to provide D'Apuzzo "[j]udicial opinions accessed via PACER" for free. For the purposes of the contract, the Court interprets the term "judicial opinion" to mean only the documents that are designated "opinions" on PACER.[8] *See P.J. Maffei Bldg. Wrecking Corp. v. United States*, 732 F.2d 913, 916-17 (Fed. Cir. 1984) (matters of contract interpretation present "question[s] of law which may be decided by this court for itself").[9] Those are the court records that D'Apuzzo is contractually entitled to for free. In this way, the term "opinion" is "sufficient[ly] definite[] so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy," *Horn v. United States*, 98 Fed. Cl. 500, 505 (2011); indeed, were the Government to charge D'Apuzzo for "opinions" so designated on PACER, it would breach the contract and entitle D'Apuzzo to damages.

The remaining elements of an express contract are met. "Consideration, in the context of a government contract, must render a benefit to the government, and not merely a detriment to the contractor." *Montefiore Hosp. Ass'n of W. Pa. v. United States*, 5 Cl. Ct. 471, 476 (1984). Here, the Government provides D'Apuzzo access to court records through the PACER system. In exchange, D'Apuzzo conferred a benefit on the Government by agreeing to pay money to

---

[8] Both parties argue that numerous extraneous documents either render, or don't render, the term "opinion" ambiguous or indefinite as used in the contract. (*See, e.g.*, ECF Nos. 67 at pp. 6-8 and 80 at pp. 3-6 (citing to the PACER user manual, the official guidance documents issued by the Judicial Conference, and various other PACER-related announcements).) Notably, none of those documents are presented to PACER users during the four-step registration process. Nor do the parties suggest that D'Apuzzo reviewed these documents prior to completing that process. The Court does not consider these documents in its review of the breach of contract claim both because an "express contract 'speaks for itself and leaves no room for implications,'" *Webster*, 20 Cl. Ct. at 433, and because "parol evidence may not be utilized" to "*create* an ambiguity" in a definite contract term, like "judicial opinion" here. *King Fisher Marine Servs., Inc. v. United States*, 16 Cl. Ct. 231, 234 (1989) (citing *Zim v. W. Pub. Co.*, 573 F.2d 1318, 1323 (5th Cir. 1978)); *Axion Corp. v. United States*, 68 Fed. Cl. 468, 476 n.4 (2005) ("It is well settled that the court will not consider parol evidence to create an ambiguity where the language is plain on its face.").

[9] At the hearing on the Motions, D'Apuzzo agreed that the Court can interpret the contract as a matter of law.

access certain of those records. That the contract also permits D'Apuzzo free access to other PACER documents does not invalidate this monetary benefit to the Government or render consideration lacking. And for the authority to contract on behalf of the United States, *Total Med. Mgmt.*, 104 F.3d at 1319, there is no dispute that the Administrative Office of the United States Courts has actual authority to bind the Government by exercising its statutory duty to administer the PACER program. (*See* ECF No. 28 at p. 4.) All elements of an express contract are met.

In sum, the Court finds there is no dispute of material fact that an express contract was formed between the Government and D'Apuzzo governing his use of PACER. D'Apuzzo is therefore entitled to summary judgment on that limited ground, (ECF No. 70 at pp. 3-5). The Government's arguments against the existence of such a contract, (ECF No. 67 at pp. 5-10), are denied.[10]

### ii. *The Government Did Not Breach the Contract*

The existence of an express contract does not end the inquiry. To prevail on Count I, D'Apuzzo must still establish the remaining elements of a claim for breach of contract. D'Apuzzo claims that the Government breached its contract by charging him to access the Documents. In its motion, the Government argues that it did not breach the contract as a matter of law because the Documents were not designated as "opinions" and D'Apuzzo was appropriately charged to access them. The Court agrees with the Government.

A "breach of contract is a failure to perform a contractual duty when it is due." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). Analysis of this element requires the Court to first determine what performance the contract required, and then determine whether a party performed as

---

[10] Because there is an express contract between the Government and D'Apuzzo governing his use of PACER, an implied-in-fact contract on that subject cannot exist as a matter of law. *Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990) ("The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." (citing *ITT Fed. Support Servs., Inc. v. United States*, 531 F.2d 522, 528 n.12 (Ct. Cl. 1976)). Thus, D'Apuzzo's alternative argument—that an implied in fact contract was formed "as to PACER charges for opinions access," (ECF No. 70 at pp. 5-6)—"does not deal with subject matter that is separate from and unrelated to the valid express contract[]," and is denied accordingly. *Lee v. United States*, 895 F.3d 1363, 1370 (Fed. Cir. 2018); *see also Lee v. United States*, 130 Fed. Cl. 243, 258-59 (2017) ("The Court has no juridical power to replace the terms of the express contracts with judicially crafted implied . . . contract terms.").

required. In this respect, and as relevant to adjudication of the parties' motions, the Federal Circuit has explained that:

> the determination of whether non-compliance with the terms of a contract is material, so as to constitute a breach, is a mixed question of fact and law. What was required by way of contract performance turns on contract interpretation, which is an issue of law. At the same time, the conduct of the allegedly breaching party—in other words, what the party did or did not do—is an issue of fact. Where, as here, the facts are undisputed, the determination of whether there has been material non-compliance with the terms of a contract, and hence breach, necessarily reduces to a question of law.

*Golbert v. Dep't of Justice*, 334 F.3d 1065, 1071-72 (Fed. Cir. 2003) (citations omitted).

For the first inquiry, as earlier stated, the Government was contractually required to provide D'Apuzzo free access to court records designated as "opinions" on PACER. (*See* § 3.A.i., *supra*.) So, to constitute a breach, the Government must have charged D'Apuzzo to access such records. But there is no dispute that the Documents were not designated as "opinions" on PACER. (ECF Nos. 66, 82 at ¶¶ 22-23.) Payment was therefore required to access them. The Government did not breach the contract by charging D'Apuzzo 80 cents to access the Documents.[11]

Summary judgment is entered for the Government on Count I.

### B. The Government Did Not Breach a Duty of Good Faith and Fair Dealing

D'Apuzzo contends in Count II that the Government breached its implied covenant of good faith and fair dealing by "fail[ing] to promulgate a definition of 'judicial opinion' that could be applied consistently by various courts of the United States, or to otherwise implement safeguards to ensure free access to judicial opinions via PACER, so as to not deprive PACER users of this contractual benefit." (ECF No. 14 at ¶ 67.)

The Government seeks summary judgment on this claim on the grounds that the Government did not breach an implied covenant of good faith and fair dealing by not adopting a different definition of "opinion" from that which the

---

[11] D'Apuzzo apparently concedes as much. (*See* ECF No. 80 at p. 12 ("To be clear, Plaintiff's position is not that the authoring judges committed a breach of contract by not designating the two rulings that Plaintiff paid for").)

Plaintiff agreed to and, relatedly, that no breach occurs when a judge exercises his or her discretion to label, or to not label, an order as an "opinion."[12]

"The duty of good faith and fair dealing is inherent in every contract." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010) (citing Restatement (Second) of Contracts § 205). "The covenant imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). The purpose of this "covenant is to protect the reasonable expectations of the parties by implying terms in the agreement." *Barseback Kraft AB v. United States*, 36 Fed. Cl. 691, 706 (1996) *affirmed by* 121 F.3d 1475 (Fed. Cir. 1997). And the "modus operandi" of this claim "typically involve[s] some variation on the old bait-and-switch":

> First, the government enters into a contract that awards a significant benefit in exchange for consideration. Then, the government eliminates or rescinds that contractual provision or benefit through a subsequent action directed at the existing contract. The government may be liable for damages when the subsequent government action is specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract.

*Id.* at 829 (citations omitted). That is not this case.

D'Apuzzo could not have reasonably expected that the contract would entitle him to any say in what court orders were designated "opinions." His contract grants him free access to documents designated "opinions" on PACER. That's it. No contract term remotely supports an agreement of the parties as to how judicial "opinions" would be designated as such. (*See* D'Apuzzo's Mot., ECF No. 70 at p. 9 ("[N]either the Act's mandate nor PACER's contractual terms have any qualifiers as to which opinions should be accessible free of charge.").) So, D'Apuzzo could not reasonably expect his contract to provide him free access to the specific types of court records he claims a right to in this case.[13] Nor could

---

[12]     Because an express contract was formed between the parties, the Court denies the Government's argument that it is entitled to summary judgment on Count II based on the absence of such a contract, (*see* ECF No. 67 at pp. 15-16).

[13]     (*See, e.g.,* ECF No. 70 at p. 9 ("any document issued by a judge or judges of the court, sitting in that capacity, that sets forth a reasoned explanation for a

D'Apuzzo reasonably expect that the contract granted him the ability to challenge an "opinion" designation or non-designation. Put differently, there is no basis for D'Apuzzo's belief that the contract allows him (or requires this Court) to supervise Judge Cohn and Judge Jones' exercise of their official duties.

Instead, the contract left to the Government—namely, federal judges—the absolute authority to decide what court orders constitute judicial "opinions." The Government did not breach an implied duty of good faith and fair dealing by exercising this complete discretion, as permitted by the contract and consistent with D'Apuzzo's reasonable expectations flowing therefrom. *Barseback*, 36 Fed. Cl. at 706 ("if the parties contract for a provision that provides one party with unconditional discretion, the only reasonable expectations of the parties is that the party vested with such discretion will exercise that discretion at some point in time"); *see also Precision Pine*, 596 F.3d at 831.

Summary judgment is entered for the Government on Count II.[14]

### C.  There is No Jurisdiction for Count III

In Count III, for "illegal exaction," D'Apuzzo seeks the return of "improperly collected user fees from [D'Apuzzo] . . . in excess of those authorized by Congress under the E-Government Act and under the PACER Fee Schedule." (ECF No. 14 at ¶ 79.) The Government seeks summary judgment on this count, claiming the Court lacks jurisdiction to entertain it under 28 U.S.C. § 1346. The Court agrees with the Government.

"In both the Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), Congress has waived sovereign immunity for certain actions for monetary relief against the United States." *Doe v. United States*, 372 F.3d 1308, 1312 (Fed. Cir. 2004). "To invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting *Cyprus Amax Coal Co. v. United States*, 25 F.3d 1369, 1373 (Fed.

---

court's decision"), p. 10 (all reports and recommendations and orders adopting them).)

[14]   In his briefing, D'Apuzzo did not identify any authority to support a finding that the Government can breach a duty of good faith and fair dealing by failing to enact legislation or regulations, or otherwise govern. (*See* D'Apuzzo's Mot. ECF No. 70 at p. 1 (arguing that "the Government breached its contractual duty of good faith and fair dealing, and the E-Government Act's mandate, by failing to implement a suitable opinions definition").)

Cir. 2005) ("[T]o invoke jurisdiction under the Tucker Act, a party must point to a complementary substantive right found in another source of federal law, such as the Constitution, federal statutes, or executive regulations.")).[15]

There is no jurisdiction over the illegal exaction claim. First, and as indicated in the order denying class certification in this case (ECF No. 47 at p. 4), the Court does not agree with D'Apuzzo that section 205(a)(5) of the E-Government Act mandates free access to judicial opinions. Section 205(a)(5) requires courts to maintain websites providing "[a]ccess to the substance of all written opinions issued by the court, regardless of whether such opinions are to be published in the official court reporter, in a text searchable format." Pub. L. No. 107-347, § 205(a)(5). This language does not evoke a congressional intent to govern if, and to what extent, judicial opinions are charged to the public. Instead, section 205(a)(5) simply mandates that the substance of opinions be provided on a website in "text searchable format." *Id.*

The Court's understanding of section 205(a)(5) is informed by section 205(a)(4). *Id.*, § 205(a)(4). That provision requires website "[a]ccess to docket information for each case." *Id.* But the PACER Fee Schedule, set by the Judicial Conference of the United States, charges 10 cents per page to access "docket sheets." (ECF No. 64-1 at p. 7.) The Court does not believe that Congress intended the term "access" to mean "free access" with respect to judicial opinions in section 205(a)(5), but not for "docket information" under section 205(a)(4). *See Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) ("In the end, we cannot accept respondent's position without unreasonably giving the word 'filed' two different meanings in the same section of the statute."). Nor does the Court believe the Judicial Conference—which consists of the Chief Justice of the United States Supreme Court, the chief judges for each judicial circuit and other federal judges, 28 U.S.C. § 331—misconstrued the E-Government Act in charging to access docket information.

Finally, interpreting section 205(a)(5) as not requiring free access to judicial opinions finds support in 28 U.S.C. §§ 1913, 1914. Through those statutes, Congress delegated to the Judicial Conference of the United States the authority to prescribe fees that may be collected by district courts (with exception for case filing fees required under the statute). *Id.*, § 1914 ("The clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States."); *see also* Pub. L. 101-515, § 404, 104 Stat. 2132 (Nov. 5, 1990) (codified at 28 U.S.C. § 1913 note) ("The Judicial Conference

---

[15] *Crocker v. United States*, 37 Fed. Cl. 191, 200 (1997) ("[O]ther than the dollar limit on district court jurisdiction, there is no difference between the 'little' and 'big' Tucker Act.").

shall prescribe reasonable fees, pursuant to sections 1913, 1914, 1926, and 1930 of title 28, United States Code, for collection by the courts under those sections for access to information available through automatic data processing equipment."); *Nat'l Veterans Legal Servs. Program v. United States*, 291 F. Supp. 3d 123, 127-29 (D.D.C. 2018) ("the Judicial Conference was given the authority (indeed, it was required) to charge reasonable fees for 'access to information available through automatic data processing equipment,' which covered its newly-developed PACER system" (footnote omitted)). The Court does not read section 205(a)(5) to impinge on Congress' delegation of authority to the Judicial Conference to determine the fees that may be charged to access court records. *See* S. Rep. No. 107-174, 2002 WL 1425816, at **22-23 (June 24, 2002) (Report on the E-Government Act by the Senate Committee on Governmental Affairs, "*encourag[ing]* the Judicial Conference" to amend its fee structure for access to PACER documents (emphasis added)).

In sum, the E-Government Act neither mandates free access to judicial opinions nor creates a remedy for the return of monies purportedly paid to access such documents. *Norman*, 429 F.3d at 1095, 1096. The Act thus is not a source of jurisdiction for D'Apuzzo's illegal exaction claim. *Id.*

D'Apuzzo argues in the alternative that the PACER Fee Schedule is an independent basis for jurisdiction over Count III. The Court disagrees. "[T]o invoke jurisdiction under the Tucker Act, a party must point to a complementary substantive right found in another source of federal law, such as the Constitution, federal statutes, or executive regulations." *Cyprus*, 205 F.3d at 1373 (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983) ("If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit.")); 28 U.S.C. § 1346(a)(1) (waiving the United States' sovereign immunity for claims founded upon the Constitution, any Act of Congress or any regulation of an executive department). The PACER Fee Schedule is set by the Judicial Conference, an entity composed of federal judges belonging to the judicial branch. 28 U.S.C. § 331. So, to the extent the illegal exaction claim is based on the Fee Schedule—rather than the Constitution, an Act of Congress or a regulation of an *executive* department, 28 U.S.C. § 1346(a)(1)—the Court lacks jurisdiction to entertain that claim. *Cyprus*, 205 F.3d at 1373; *but see In re United States*, 463 F.3d 1328, 1336 n.6 (Fed. Cir. 2006) (leaving as open question whether Judicial Conference regulations can provide a basis for Tucker Act jurisdiction).

In any event, Count III fails on the merits. An illegal exaction claim exists when "the plaintiff has paid money over to the Government, either directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a

statute, or a regulation." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (quotations omitted).

D'Apuzzo did not improperly pay for the Documents. The guidance documents implementing the E-Government Act delegate to the "authoring judge" the ultimate "responsibility for determining which documents" constitute "opinions." (ECF No. 40-5 at p. 3.) And it is undisputed that Judge Cohn and Judge Jones did not designate the Documents as "opinions." (ECF Nos. 66, 82 at ¶¶ 22-23.) Thus, even if jurisdiction existed over Count III, that claim would still fail because D'Apuzzo was appropriately charged to access the Documents, which were not designated as opinions by the authoring judges. *See Citizens Ins. Co. of Am. v. United States*, 102 Fed. Cl. 733, 741-42 (2011) (illegal exaction claims fail where payment to the government was not contrary to law).

The Court therefore grants the Government's motion with respect to Count III and dismisses the illegal exaction claim.

### 4.  Conclusion

In sum, the Court orders as follows:

- D'Apuzzo's motion for summary judgment (**ECF No. 70**) is **granted in part**, only to the extent that the Court finds a valid express contract exists between the Government and D'Apuzzo.

- The Government's motion for summary judgment (**ECF No. 67**) is **granted in part**. The Court enters summary judgment for the Government on Counts I and II of the amended complaint and dismisses Count III.

- All arguments raised by the parties in their motions for summary judgment that are not expressly adjudicated in this order are **denied as moot**.

- D'Apuzzo's motion to reconsider the Court's prior order denying class certification (**ECF No. 52**) is **denied as moot.** *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005) ("Because we have found that summary judgment was properly granted as to the underlying claims of the class representatives, the issue of class certification is moot."); *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 880-81 (Fed. Cir. 2007) (same).

- The Government's motion in limine (**ECF No. 90**) and all other motions are **denied as moot**.

- The **Clerk** is directed to **close** this case.

**Done and ordered,** in chambers, at Miami, Florida on June 27, 2019.

Robert N. Scola, Jr.
United States District Judge